Docket No. 23-4509

# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

United States of America .................................................................Plaintiff-Appellee,

v.

Russell Lucius Laffitte ..............................................................Defendant-Appellant.

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA,
BEAUFORT DIVISION, RICHARD M. GERGEL, DISTRICT JUDGE

_____

## DEFENDANT-APPELLANT'S MOTION FOR RELEASE PENDING APPEAL

_____

William W. Wilkins
MAYNARD NEXSEN PC
104 S. Main Street, Suite 900
Greenville, SC 29601
Phone: 864.370.2211
Fax: 864.282.1177
Email: bwilkins@maynardnexsen.com

Mark C. Moore
Michael A. Parente
MAYNARD NEXSEN PC
1230 Main Street, Suite 700
Columbia, SC 29201
Phone: 803.771.8900
Fax: 803.253.8277
Email: mmoore@maynardnexsen.com
Email: mparente@maynardnexsen.com

John C. Neiman, Jr.
MAYNARD NEXSEN PC
901 Sixth Avenue North, Suite 1700
Birmingham, AL 35203
Phone: 205.254.1000
Fax: 205.254.1999
Email: jneiman@maynardnexsen.com

*Counsel for Defendant-Appellant*
*Russell Lucius Laffitte*

# **TABLE OF CONTENTS**

INTRODUCTION ........................................................................................2

FACTUAL BACKGROUND........................................................................2

   I.   The court received four notes from jurors late in their deliberations..............2

   II.   The court removed Juror 88 after a three-minute *in camera* interview, and removed Juror 93 without speaking to her. ..........................................................9

   III.   Laffitte's objected to the court's replacement of the jurors. .......................10

   IV.   The two removed jurors executed affidavits following trial......................12

   V.   The court denied consideration of the juror affidavits, denied a motion for new trial, and sentenced Laffitte...........................................................................15

STANDARD OF REVIEW ........................................................................16

ARGUMENT ............................................................................................17

   I.   Laffitte is not likely to flee, does not pose a danger to the community, and is not appealing for the purpose of delay. .................................................................17

   II.   The district court is likely to be reversed based on its erroneous removal of the two jurors. .......................................................................................................18

   a.   The district court committed reversible error by removing Juror 88 outside Laffitte's presence............................................................................................18

   b.   The court committed reversible error by removing Juror 93. .......................27

CONCLUSION........................................................................................30

CERTIFICATE OF COMPLIANCE.......................................................32

CERTIFICATE OF SERVICE ................................................................33

**INTRODUCTION**

Defendant Russell Lucius Laffitte ("Laffitte") respectfully requests that this Court grant him release pending the outcome of his appeal. The district court ("the court" or alternately, "the district court") committed fundamental and extraordinary errors in discharging two jurors during deliberations outside Laffitte's presence. Laffitte is likely to obtain reversal of his convictions, and he should not be required to go to prison under these circumstances. The Government opposes this Motion.

**FACTUAL BACKGROUND**

**I.    The court received four notes from jurors late in their deliberations.**

Laffitte was indicted on charges of bank fraud, wire fraud, misapplication of bank funds, and conspiracy. Dkt. 61. Laffitte's trial commenced on November 8, 2022, and jury deliberations did not start until the morning of November 22 – two days before Thanksgiving and the day before the court was to close for the holiday. Dkt. 223 (attached as **Exhibit A**). After over nine hours of deliberations, the court received four juror notes (Dkt. 205 at 2-5, attached as sealed **Exhibit B**) that ultimately prompted it to dismiss two jurors that night. Dkt. 223 at 49-52.

The first two notes, from the same juror,[1] were read by the court to the parties at 7:43 p.m. *Id.* at 49-51. The court did not provide copies of the notes to the parties

---

[1] ████████████████████████████████████████████████████
████████████

and did not read them in their entirety on the record. The first, as read into the record by the district court, stated, "Need antibiotic at 19:21. I could delay one or two hours." *Id.* at 50.[2] The second stated, "Feeling pressured to change my vote." *Id.* Based on this information *only*, the court opined that its "instinct" was "that we have alternates and **we should get to a verdict**, and that it is not practical to get her medicine and drive back." *Id.* at 50 (emphasis added).

Laffitte's trial counsel suggested that the jurors instead "come back in the morning." *Id.* The court resisted, stating, "we don't have an issue of them not deliberating" *Id*—and the court appeared to gloss over the concern expressed by the juror that she was feeling pressured to change a vote. The Government expressed concern about the planned court closure the next day, arguing that "[e]specially with the impending holiday ahead of us, we would like for them to continue to deliberate tonight." *Id.* at 51.

Before taking action on the first two notes, the court announced that it had received a third note from a group of jurors, reading:

> On page 11, your final charge to us states that if you let fear or prejudice or bias or sympathy interfere with your

[2]

(Dkt. 258, attached as sealed **Exhibit E**.)

3

> thinking, there is a risk that you will not arrive at a true and just verdict. A juror's previous court experience is influencing that juror's ability to discuss the trial in a group setting. That juror has made comments on having been bullied as a juror on previous trials and will not consider the evidence in this trial. The juror is hostile to hearing any debate from certain other jurors, and the juror disagrees with your final charge and specifically the definitions you've provided. We respectfully ask that you consider speaking to this issue so that we are able to proceed with deliberations.

*Id.* at 52. The court informed the parties it had "no idea" whether the "non-deliberating" juror was the same juror who sent the first two notes. *Id.* The court stated, "This appears to be -- I can't quite figure out. May be all the other jurors[?]" *Id.*[3]

While discussing that note with the parties, the court received a fourth note, which the court said came from "a different juror." *Id.* The court read into the record: "Your Honor, can you please call an alternate as I am experiencing anxiety and unable to clearly make my decision?" *Id.*

As it turned out, the court had not disclosed the notes in full to the parties. On July 17, 2023, ██████████████████████████████████████████████ ██████████████████████████████████████ Dkt. 300. The notes contain

---

[3] ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████ ██████████████████

important information the court had not previously disclosed. ███████████

████████████████████████████████████████████

███████████ Dkt. 205 at 5. ████████████████████████

████████████████████████████████████████████

████████████████████████████ *Id.* at 3. ██████████████

████████████████████████████████████████████

█████████████████████████████ *Id.* at 4. ████████████

████████████████████████████████████████████

███████████████████████

█████████████████████████████████████████

███████, the court discussed next steps with the parties. Despite the fact that the court was now facing significant issues with a jury that perhaps required recharging on the issue of how it should reach a verdict, the court did not suggest doing that or simply sending the jury home for the evening and bringing it back the next day.

Regarding the purportedly "non-deliberating" juror, it said, "If a juror told me that she was unable or … unwilling to consider the evidence because of prior court experience, I would remove the juror, whatever that is … I just would remove someone, because we don't allow people to serve on juries that don't follow the Court's instructions." Dkt. 223 at 53. The court noted that it "had no idea" if the "non-deliberating" juror was the juror who inquired about needing medicine—and

5

the court further indicated that it did not know whether multiple jurors might be failing to deliberate. *Id.* The court "welcome[d] suggestions from the parties." *Id.*

After the Government recommended that the court replace both the "non-deliberating" juror and the juror needing medication – but said nothing about the anxious juror – the court announced its "inclination" to "speak to" the "non-deliberating" juror. *Id.* at 55. The court opined that it would be a "huge mistake" to "bring the [non-deliberating] juror into the courtroom" and suggested that the "best way" to proceed would be for the court "and a court reporter and [the] deputy … to create a record of this, and simply ask the [non-deliberating] juror in a conference room" if "there [was] a problem." *Id.*

As to the juror needing medication, the court stated, "I think the one with the medicine we need to send home. She needs her medicine … If that happens to be the same person, that happens to be the same person." *Id.* at 56. ██████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

███████.[4]

Turning to the "person with the anxiety," the court stated, "[T]hat's a concern

---

[4] ███████████████████████████████████████████████████
████████████████

for me too … having somebody who says I can't do it anymore." *Id.* at 57. "But," the court added, "I want to hear from everybody before I make a decision, because I think we are on virgin territory … I've never has this experience." *Id.* The Government stated its positions as to each of the potential juror situations. The Government said that the juror needing medicine "should be allowed to go home"; that the juror who could not "follow the law" should be "struck for cause"; and that the "anxious" juror was "still a viable juror." *Id.* at 56-57. The court responded that it had not yet confirmed that there was a "non-deliberating" juror and said that it did not "want anybody else ganging up on somebody and trying to bump them off a jury." *Id.* at 56-57. "I can't let a juror be bumped out one way or the other who says, that's not accurate, I'm fully participating, they just don't agree with me," the court said. *Id.* at 57. "[T]hat's not a juror I remove … I tell them in my charge hold your convictions whatever that is." *Id.*

Reiterating its intent to "confirm" reports of a non-deliberating juror, the court announced, "[W]ith the consent of the parties, we are going to set up a place where I will take a court reporter, and without anyone present but the court reporter, I will create a record. And with my deputy and my court reporter, I will ask the juror if there's a problem." *Id.* at 58.

While Laffitte's counsel did not interject at this point, the Government requested that the court not only interview the allegedly "non-deliberating" juror,

but also "do the same thing with the juror who's reporting being anxious." *Id.* The court did not respond, and repeated its request for consent **only** to interview the purportedly "non-deliberating" juror: "Do I have the consent of the parties for me creating a record to question the juror?" *Id.* Counsel for both the Government and Laffitte gave their consent for the court **only** to "create[] a record to question the juror." *Id.* The court **never** addressed Laffitte directly and never explained to him his rights and its intentions beyond interviewing the juror. And while the record reflects that the Government agreed to the replacement of the juror needing medication prior to the court's departure from the courtroom, Laffitte's counsel did not voice such an agreement to the replacement of any juror.

The court dispatched its deputy to speak to the jury foreman to determine the purportedly "non-deliberating" juror's identity. *Id.* at 59-60.[5] It then told the parties, "I'm going to take action." *Id.* at 60. As to the "action" of creating a record, Government counsel responded affirmatively, and Laffitte's counsel did not respond before the court conducted the *in camera* review. *Id.*

_____

[5]

**II.    The court removed Juror 88 after a three-minute *in camera* interview, and removed Juror 93 without speaking to her.**

The court then did something it never told the parties it might do: it not only conducted a three-minute interview with ████████████████████████ ██████, Dkt. 212 (attached as sealed **Exhibit C**), it also removed her without consulting the parties and did so outside the presence of Laffitte, his trial counsel, and the Government. Dkt. 223 at 60.

Upon returning to the courtroom at 8:27 p.m., the court announced that the "juror regarding the medicine" – Juror 93 – "ha[d] been replaced and ha[d] been allowed to go home." *Id*. It did so even though neither Laffitte nor his counsel had agreed to this juror's removal prior to that time. It also did so even though the court did not speak with Juror 93, and ████████████████████████ ██████████████████████████

The court then announced that it had "spoke[n] with the juror expressing anxiety" – Juror 88. *Id.* ████████████████████████ ████████████████████████████████████████████ ████████████████████████████████████████████ ████████████████████████ The court instead told the parties that she "asked to be relieved and said she wasn't able to go forward, and I removed her. I

9

relieved her. I granted her request … for an alternate." *Id*.[6]

The court, without explaining how it knew this, then informed counsel that the "decisions [it had] made resolved the other issue," relating to the purportedly "non-deliberating" juror. *Id.* at 61.

## III.    Laffitte's specifically objected to the court's replacement of Juror 88.

Laffitte's trial counsel immediately objected[7] to the removal of "the second juror that was replaced [for] anxiety." *Id.* at 62. The court stated, "You can make an

---

[6]



[7] Although Laffitte's trial counsel inaccurately stated that he had previously agreed with the removal of the juror who needed medication, it must be noted that the record does not reflect such an agreement—indeed, trial counsel had initially requested that the court break for the evening after learning of the first note received that evening from the juror who indicated she needed medication in several hours.

objection," but this juror was "emotionally very fragile." *Id.* "She could hardly speak to me," the court said. *Id.* "And she explained to me she was on anxiety medication and that she was not physically capable or emotionally capable of going forward." *Id.* The court then replaced the removed jurors with two alternates. The court briefly addressed the reconstituted jury, but did not fully charge it, and the jury retired to deliberate. *Id.* at 62-63.

Laffitte's counsel then renewed his objection to the removal of Juror 88. *Id.* at 63. The court called the objection a "moment late," claiming that Laffitte's counsel had "agreed to" the "procedure." *Id.* at 64. Laffitte's trial counsel disagreed, saying, "I thought we were just going to be interviewing them, not necessarily replacing them." *Id.* The court responded:

> You know, I try to be as transparent as I could. I read everybody everything. I asked what you wanted me to do. I interviewed the juror, who was plainly incapable of continuing, and she was in an emotional meltdown. And I removed her. And that's what I understood y'all—we had agreed that I would interview her and I would make a decision.

*Id.* Laffitte's trial counsel expressed his understanding that "[w]e thought you were coming back to tell us what the juror said or to give us what your decision would be so that we could object to it." *Id.* at 65. Laffitte's counsel said that if the court had informed the parties that Juror 88 was "emotionally incapable of functioning and [had] asked [the court] again to remove her," – which, again, she did not do –

Laffitte's counsel would have "stated that it's a hung jury." *Id.* "It's not a hung jury," said the court. *Id.* "I have alternates." *Id.*

Only 49 minutes after the newly constituted jury purportedly began deliberations anew, it reached guilty verdicts on all six counts. *Id.* at 63-69.

## IV.    The two removed jurors executed affidavits following trial.

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

███████████████████████████████████ Dkt. 257; Dkt. 258 (attached as sealed **Exhibit D** and **Exhibit E**). ██████████████████████████

██████████████████ (attached as sealed **Exhibit F**).

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

12





███████████████████████████████████████████████

█████████

## V.    The court denied consideration of the juror affidavits, denied a motion for new trial, and sentenced Laffitte.

On December 6, 2022, ███████████████████████████, Laffitte's former counsel filed a Motion for New Trial, based primarily on these juror-replacement issues. Dkt. 224 (attached as **Exhibit G**). On December 20, Laffitte's former counsel filed a Motion to Seal the juror affidavits, Dkt. 230, which was originally granted, Dkt. 232, then vacated when the court requested briefing on the affidavits' admissibility under Federal Rule of Evidence 606(b), Dkt. 233. Following briefing, Dkt. 242; 254 (attached as sealed **Exhibit H** and **Exhibit I**), ██████████

███████████████████████████████████████████████

███████████████████████████████████████████████

████████████████████████████████████████████████.[9]

███████████████████████████████████████████████

███████████████████████████████████████████████

_____

█████████████████████████████████████Dkt. 262; 263.

[9] ███████████████████████████████████████████████
██████████████████████████████

███████████████████████████████

███████████████████████████████

███████████████████████████████

Dkt. 269 (attached as sealed **Exhibit J**). The court also denied a motion for a new trial. Dkt. 267 (attached as **Exhibit K**).

The court sentenced Laffitte to 84 months imprisonment, followed by five years of supervised release. Dkt. 316; 317 (attached as **Exhibit L** and sealed **Exhibit M**). At sentencing, Laffitte's counsel requested that Laffitte be released pending appeal and the opportunity to brief the matter.[10] The court denied the request to brief the issue and denied the request for an appeal bond from the bench, stating that it did not believe that it needed a hearing or briefing. *Id.* at 2.

## STANDARD OF REVIEW

With exceptions not applicable here, a defendant who appeals his conviction is entitled to release pending appeal if he can show (1) by clear and convincing evidence that he is not likely to flee or pose a danger to the safety of any other person or the community if he is released; (2) that his appeal is not for the purpose of delay; and (3) that the appeal raises a "substantial question of law or fact likely to result

---

[10] Laffitte has ordered a transcript of the sentencing hearing and will provide it to this Court once it is available.

16

in," as relevant here, "reversal [or] an order for a new trial." 18 U.S.C. § 3143(b). Laffitte satisfies all these requirements.

## **ARGUMENT**

### I.  **Laffitte is not likely to flee, does not pose a danger to the community, and is not appealing for the purpose of delay.**

As the magistrate judge acknowledged when granting him pretrial bond, and the district court reiterated at his sentencing hearing, Laffitte poses neither a flight risk nor a danger to the community. He has surrendered his passport. Dkt. 21 at 19. ██████████████████████████████████████████████████ *See* PSR ¶¶ 152-157. He is a resident of Hampton County, South Carolina, where his family resides, where he was born, and where he has lived and worked since college. Dkt. 21 at 11. Dkt. 221 at 1715-16. Even at the trial's conclusion, the court acknowledged that "it's appropriate to continue the bond, because [Laffitte] has been fully compliant throughout the time [he has] been on bond." Dkt. 223 at 69.

Furthermore, this appeal is not taken for purposes of delay. As discussed below, Laffitte's appeal will raise meritorious grounds for reversal and a new trial.[11]

---

[11] While Laffitte intends to raise other issues on appeal, including those that relate to evidence improperly excluded by the court at trial, this Motion focuses on the improper removal of two jurors.

17

## II. The district court is likely to be reversed based on its erroneous removal of the two jurors.

The errors entailed by the removal of these two jurors are "substantial." 18 U.S.C. § 3143(b). Removal of either juror alone is sufficient to require reversal, and taken together they make the likelihood of that outcome even more certain.

### a. The district court committed reversible error by removing Juror 88 outside Laffitte's presence.

This Court has long held that the Fifth Amendment's Due Process Clause and Federal Rule of Criminal Procedure 43 "require[] the defendant's presence" at both "jury impanelment" and "the removal of jurors." *United States v. Runyon*, 707 F.3d 475, 517 (4th Cir. 2013). It is indisputable that Laffitte was not present when Juror 88 was removed, but the district court concluded that he "waive[d] his right to object to the juror's replacement" by agreeing "to a procedure for [her] replacement." Dkt. 267 at 15 (citing *United States v. Spruill*, 808 F.3d 585, 598 (2d Cir. 2015)). It is clear that no such waiver occurred.

In denying Laffitte's motion for a new trial, the district court explained its reasons for concluding that he consented to this juror's removal:

> Both defense and the Government counsel agreed to the Court addressing Juror 88's request to be replaced with an alternate *in camera*. The only issue with Juror 88 was whether the Court would honor her request to replace her with an alternate. Before departing the courtroom, the Court stated that it intended to speak with Juror 88 and to 'take action' on her request to be replaced. There was no objection to the Court's plan of action.

18

Dkt. 267 at 13-14 (citation omitted). In addressing Laffitte's objection following this juror's removal, the court recounted that "defense counsel had plainly agreed to the *in camera* questioning of the juror and for the district court to 'take action' on the juror's request to be replaced." *Id.* at 15 (citation omitted). The court summarized its findings as follows:

> [Laffitte], through counsel, agreed to the process used by the Court to question Juror 88 *in camera* and to take action on the request of the juror to be replaced. [Laffitte] was present throughout the entire discussion that led to the adoption of this procedure.

*Id.*

But a review of the transcript demonstrates, unambiguously, that Laffitte's counsel did not agree to an *in camera* process by which the court would remove any juror outside his presence. Counsel agreed to only an *in camera* interview nothing more.

The court had noted, "I want to hear from everybody before I make a decision" to remove any jurors. Dkt. 223 at 56. The district court indicated it also wanted to "confirm" the reports of a non-deliberating juror before making any such decisions and stated:

> I can't let a juror be bumped out one way or the other who says, that's not accurate, I'm fully participating, they just don't agree with me. That—you know, that's not a juror I remove ... I tell them in my charge hold your convictions whatever that is.

*Id.* at 57. In the end, the court made its decisions without Laffitte's consent, resulting in a juror with strongly-held convictions being "bumped" off the jury because other jurors disagreed with her.

The portion of the transcript (attached in full as **Exhibit A**) in which the court discusses the proposed *in camera* questioning is reproduced below. At no point did Laffitte consent to this juror's removal—in or out of his presence:

> THE COURT: … I will need—**with the consent of the parties,** we are going to set up a place where I will take a court reporter, and without anyone present but the court reporter, **I will create a record. And with my deputy and my court reporter, I will ask the juror if there's a problem.**

> [GOVERNMENT] MS. LIMEHOUSE: **Your Honor, we would request that you maybe do the same thing with the juror who's reporting being anxious.** There could be contribution. This sort of environment could be contributing to the anxiety that could be alleviated depending on how you decide to handle the jurors.

> THE COURT: **Do I have the consent of the parties for me creating a record to question the juror?**

> MS. LIMEHOUSE: Yes, as long as it's on the record, we have no objection, Your Honor.

> THE COURT: Mr. Daniel?

> [DEFENSE] MR. DANIEL: Yes, you do have the consent, Your Honor.

> …

> THE COURT: Okay. Ms. Perry, I want you to go in and
> see if you can get—ask them to identify the juror number,
> because that may solve several problems if there's an
> overlap there.
>
> …
>
> THE COURT: Okay. **I'm going to take action. Fair
> enough? Everybody happy with that?**

*Id.* at 56-60 (emphasis added). Nothing in that transcript suggests that Laffitte

waived his right to be present if the court sought to remove any juror.[12]

The court's contrary conclusion rested on the false premise that Laffitte

"agreed to the process used by the Court to question Juror 88 *in camera* and **to take**

**action on the request of the juror to be replaced**." Dkt. 267 at 15 (emphasis

added). But the court never stated that it intended to take action "on the request of

the juror to be replaced." *Id.* It simply stated that it was "going to take action." *Id.*

The court never asked Laffitte for consent to make an *in camera* removal as to any

---

[12] It could be argued, based on the record, that Laffitte's counsel consented only to
the interview of the allegedly "non-deliberating" juror, who the court identified in
its March 6, 2023 Order denying the Motion for a New Trial as Juror 93 (Dkt. 267
at 14) — and not the juror interviewed by the court, Juror 88. ▮▮▮▮▮

21

juror, and Laffitte did not provide it – indeed, the court's colloquy with counsel never mentioned removal at all. Dkt. 223 at 60. Moreover, the court never addressed Laffitte personally during its colloquy – the court never made sure he understood his rights and the court's intentions and never asked for his consent to make an *in camera* removal. And the court failed to inform Laffitte or his counsel of the identities of the authors of any of the four notes—critical information which Laffitte needed to make important strategic decisions and which was withheld from him despite the fact that the court indicated it had provided all of the information in its possession concerning the notes.

The district court claimed to find support for its ruling in the Second Circuit's decision in *Spruill*, 808 F.3d 585, a case that looks nothing like this one. *Spruill* involved the removal of a juror who informed the court her "gut feeling" was "potentially creating a bias" and asked to be replaced. *Id.* at 590. With the parties' consent, the court questioned the juror **in their presence**, and ultimately dismissed her only after **both parties agreed** to it. *Id.* at 591-92. The Second Circuit concluded that the defendant waived any challenge to that juror's removal because he "acted intentionally when he affirmatively agreed to and, at times, even recommended the actions he now challenges." *Id.* at 598.

Here, the court made only one request to which Laffitte's counsel affirmatively consented: "Do I have the consent of the parties **for me creating a**

**record** to question the juror?" Dkt. 223 at 58 (emphasis added). Laffitte's counsel agreed to an *in camera* "create[ion]" of "a record," *id.*, not an *in camera* juror removal.

*Spruill* aside, the court's proposed "procedure" did not contemplate an *in camera* juror-removal determination. At most, it indicated the court's intention to interview a juror and report back. As a result, Laffitte's trial counsel reasonably believed that the court would not make any removal determination without the input of the parties, following the *in camera* interview

While the Government can be expected to argue that, as it did in the court below, that the consent of Laffitte's counsel to an *in camera* interview equals consent to whatever action the court took following the interview, the record completely belies that argument. ██████████████████████████████████

██████████████████████████████████████████████████

Before Laffitte's counsel purportedly consented to the removal of Juror 88, the court represented to them, "I think **I've now fully disclosed** all my notes." Dkt. 223 at 52-53 (emphasis added). But that was incorrect regarding Juror 88 in several respects.

████████████████████████████████████████ Dkt. 205 at 5. ██████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

23

███████████████████████████████████████████████████████████

████████████████████████ *Id.* Had they chosen to consent, which they did not, they would

have done so based on the court's mistaken representation that it had fully disclosed

all available information. ████████████████████████████████████████

███████████████████████████████████████████████████████████

Thus, any ostensible consent by Laffitte's attorneys (and to be clear, the record

indicates there was none) would not have been knowing and voluntary and thus

would have been ineffective.

If the court had reported the full results of the interview to the parties and/or

sought their opinion on potential other questions to be posed to Juror 88, rather than

simply removing this juror outside Laffitte's presence, Laffitte would have objected

to any suggestion that she be removed. During that interview, a transcript of which

was again first made available to the parties a week after the verdict on

November 29, 2022,[13] ████████████████████████████ Dkt. 212 at 2. ████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

*Id.* at 3. ████████████████████████████████████████

███████████████████████████████████████████████████████████

---

[13] The transcript was docketed and transmitted to trial counsel on November 29,
2022. Dkt. 212.

███████████████████████████████████████████

███████████████████████ *Id.* at 2. █████████████████████████

███████████████████████████████████████████

████████████████████████████████████████ This juror was

experiencing the exact type of behavior that the court stated it would not abide, and

it was no basis for her removal. *See* Dkt. 223 at 56-57. The court failed to address

the bullying the juror was experiencing—it simply dismissed her without Laffitte's

consent.

The court's removal of this juror was also erroneous because it violated the

rule, premised on Laffitte's Sixth Amendment rights, that a court must "deny" any

request to discharge jurors when it is "reasonably possible" that the request stems

from their "view[s] of the sufficiency of the government's evidence." *United*

*States v. Brown*, 823 F.2d 591, 594 (D.C. Cir. 1987); *accord United States v.*

*Thomas*, 116 F.3d 606, 601-12 (2d Cir. 1997); *United States v. Kemp*, 500 F.3d 257,

304 (3d Cir. 2007); *United States v. Symington*, 195 F.3d 1080, 1084 (9th Cir. 1999);

*United States v. Abbell*, 271 F.3d 1286, 1303 (11th Cir. 2001); *United States v.*

*Ozomaro*, 44 F.4th 538, 546-47 (6th Cir. 2022). ████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

████████████████ Dkt. 212 at 2 (emphasis added). ██████████████████

███████████████████████████████████████████

███████ *Id.* █████████████████████████████████

███████████████████████████████████████████

███████████████ *Brown*, 823 F.2d 591, 594.

The court committed yet a third error in removing this juror by ignoring this Court's instruction, "given the importance attached to keeping the original jury together," to "consider reasonable alternatives available to it instead of dismissing the juror and substituting an alternate." *United States v. Toliver*, 793 F. App'x 151, 160 (4th Cir. 2010). The court failed to consider **any** reasonable alternatives to this juror's removal. During the *in camera* interview, ████████████████████

███████████████████████████████████████████

████████████ Dkt. 212 at 2. ████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

████████████████████████ *Id.* That was reversible error. *See United States v. Nelson*, 102 F.3d 1344, 1349 (4th Cir. 1996).

Laffitte's counsel objected to this juror's *in camera* removal immediately after the court announced it, and objected again before the jury returned its verdict. *See* Dkt. 223 at 61-66. The Government is thus required to prove "beyond a reasonable

doubt that the jury would have returned a guilty verdict absent the allegedly harmless error." *United States v. Garcia-Lagunas*, 835 F.3d 479, 488 (4th Cir. 2016) (quoting *United States v. Camacho*, 955 F.2d 950, 955 (4th Cir. 1992)). It will not be able to do so. ███████████████████████████████████████████████████

███████████████████████ Dkt. 212 at 2. ███████████████████████

████████████████████████████████████████████████████████████

Dkt. 257 at ¶¶ 6, 9, 12, 13, 15. On this basis alone, the verdict should be reversed.

### b. The court committed reversible error by removing Juror 93.

While the removal of Juror 88 alone requires reversal, the removal of Juror 93 – the juror who had requested medication – was reversible error as well. For the same reasons removing Juror 88 outside Laffitte's presence violated Laffitte's rights, the court's removal of Juror 93 violated those rights as well. *See supra* at Section II(a). As discussed in the previous section, Laffitte did not consent to the court making an *in camera* removal of any juror.

The district court stated in its Order denying a Motion for New Trial, that it was prepared to sit down with the allegedly "non-deliberating" juror, but was "advised that this juror was the one with the medication issue and had already been sent home by agreement of the parties." Dkt. 267 at 14. However, the record and careful review of the juror notes does not support this conclusion. First, there was no prior "agreement of the parties" to remove Juror 93 – the court did this summarily

after conducting the *in camera* review of Juror 88. The record does **not** reflect that Laffitte (who was never addressed) or his trial counsel agreed to the removal of Juror 93 prior to the court's departure from the courtroom to conduct its interview. Second, the record is silent on how the court "was advised" that the "troublesome" juror was Juror 93 and who provided this information to the court. *Id.* ██████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

Dkt. 205 at 4.

It is true that *after* the court replaced this juror, Laffitte's counsel stated that—unlike the juror who expressed concerns about anxiety—they "would object not" to the replacement of the juror who needed medication and had "agreed with" it. Dkt. 223 at 62. But counsel's statement occurred **after** the erroneous replacement of this juror, not before, and could not cure the error, especially since the record contains no indication that Laffitte himself expressed a similar consent. Any such consent would not have been knowing and voluntary, moreover, because the court did not inform Laffitte or his counsel that it had not discussed the juror's needs with the juror before dismissing her. Laffitte's counsel were entitled to assume that the court had investigated, made a record, and determined, based on evidence, that this juror's medical needs rendered her unable to perform her duties. The court did not do any of that, ████████████████████████████████████████████████████



. Critically, ███████████████████████████

███████████████████████████████████████

███████████████████████████████████████

█████████████████████████████████████. 258 at ¶

11. Finally, as noted earlier, ██████████████████████

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

████████ As a result, any consent to her removal was void.

Even if Laffitte's counsel could have retroactively "forfeited" his client's rights as to the juror, the court's decision to dismiss this juror outside Laffitte's presence amounted to reversible plain error. *See United States v. Olano*, 507 U.S. 725, 732-33 (1993). ████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

██████████████ Dkt. 223 at 50; Dkt. 258 ¶ 10. ██████████

███████████████████████████████████████

███████████████████████████████████████



Dkt. 223 at 50.

Additionally,

Dkt. 258 at ¶ 6.

Allowing this incursion on an accused's right to a jury trial would "seriously affect the fairness, integrity or public reputation of judicial proceedings." *See Olano*, 507 U.S. at 736.

## <u>CONCLUSION</u>

This Court should grant Laffitte's motion for release pending appeal. Laffitte respectfully requests that this Court act expeditiously because it is anticipated that he will be designated to report to a Bureau of Prisons facility within the next few weeks.

Dated: August 14, 2023         Respectfully submitted,

*/s/ William W. Wilkins*

William W. Wilkins
MAYNARD NEXSEN PC
104 S. Main Street, Suite 900
Greenville, SC 29601
Phone: 864.370.2211
Fax: 864.282.1177
Email: bwilkins@maynardnexsen.com

Mark C. Moore
Michael A. Parente
MAYNARD NEXSEN PC
1230 Main Street, Suite 700
Columbia, SC 29201
Phone: 803.771.8900
Fax: 803.253.8277
Email: mmoore@maynardnexsen.com
Email: mparente@maynardnexsen.com

John C. Neiman, Jr.
MAYNARD NEXSEN PC
1901 Sixth Avenue North, Suite 1700
Birmingham, AL 35203
Phone: 205.254.1000
Fax: 205.254.1999
Email: jneiman@maynardnexsen.com

*Counsel for Defendant-Appellant
Russell Lucius Laffitte*

31

## <u>CERTIFICATE OF COMPLIANCE</u>

As required by Rule 32(g)(1) of the Federal Rules of Appellate Procedure, I hereby certify that this Defendant-Appellant's Motion for Release Pending Appeal is in compliance with the type form and volume requirements. This Motion was prepared using Microsoft Word 2016. It is proportionately spaced; uses a Roman-style, serif typeface (Times New Roman) of 14-point; and contains 6,855 words, exclusive of the material not counted under Rule 32(f) of the Federal Rules of Appellate Procedure.

Dated: August 14, 2023

*/s/ William W. Wilkins*
William W. Wilkins

*Counsel for Defendant-Appellant*
*Russell Lucius Laffitte*

## <u>CERTIFICATE OF SERVICE</u>

I certify that on August 14, 2023, the foregoing Motion for Release Pending

Appeal was served on counsel of record for all parties through the CM/ECF system.


Dated: August 14, 2023          */s/ William W. Wilkins*
                                William W. Wilkins

                                *Counsel for Defendant-Appellant*
                                *Russell Lucius Laffitte*