# Exhibit A

***(Dkt. # 223 - November 22, 2022
Jury Trial Transcript)***

2109

```
1                  IN THE UNITED STATES DISTRICT COURT
                   FOR THE DISTRICT OF SOUTH CAROLINA
2                          CHARLESTON DIVISION

3

4    _____
                                    )
5    UNITED STATES OF AMERICA,      )
                                    )
6              Plaintiff,           )  Docket No. 9:22-658
                                    )
7              vs.                  )  Charleston, SC
                                    )
8    RUSSELL LUCIUS LAFFITTE,       )  Volume IX
                                    )
9              Defendant.           )
     _____)  DATE:  November 22, 2022
10

11              BEFORE THE HONORABLE RICHARD M. GERGEL
                UNITED STATES DISTRICT JUDGE, PRESIDING
12                          JURY TRIAL

13

14   A P P E A R A N C E S:

15   For the Plaintiffs:

16   EMILY EVANS LIMEHOUSE
     U.S. Attorney's Office
17   151 Meeting Street, Suite 200
     Charleston, SC 29401-2238
18   843-266-1663
     emily.limehouse@usdoj.gov
19
     WINSTON D. HOLLIDAY and KATHLEEN MICHELLE STOUGHTON
20   U.S. Attorney's Office
     1441 Main Street, Suite 500
21   Columbia, SC 29201
     803-929-3000
22   winston.holliday@usdoj.gov
     kathleen.stoughton@usdoj.gov
23

24   COURT REPORTER:              KAREN V. ANDERSEN, RMR, CRR
                                  United States Court Reporter
25                                901 Richland Street
                                  Columbia, SC  29201
```

2110

```
 1    A P P E A R A N C E S:

 2    For the Defendant:

 3    EDWARD BART DANIEL, MARSHALL AUSTIN, and MATT ABEE
      Nelson Mullins Riley and Scarborough
 4    151 Meeting Street
      Charleston, SC 29401
 5    843-534-4123
      bart.daniel@nelsonmullins.com, matt.austin@nelsonmullins.com
 6
      CHRISTIAN JOSHUA MYERS
 7    Nelson Mullins Riley and Scarborough
      101 Constitutional Avenue NW, Suite 900
 8    Washington, DC 20001
      202-689-2001
 9    josh.myers@nelsonmullins.com

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

1          THE COURT:  Is counsel ready?  We have the jury.

2    The jury has arrived.

3          MS. LIMEHOUSE:  The Government is, Your Honor.

4          MR. DANIEL:  Yes, Your Honor.

5          THE COURT:  Bring in the jury.

6          (Whereupon, the jury returns to open court at 9:13

7    a.m.)

8          THE COURT:  Please be seated.  Please give the jury

9    a copy of my charge.  Ladies and gentlemen, you've just

10   handed a copy of my final charge.  When I started practicing

11   law, the judge who would sit up in front of the jury with a

12   bunch of books and charged the jury, I was always amazed with

13   their capacity to do that.  I'm never that good.  I write out

14   my jury charge.  And then because they are complicated, I

15   give them to my jury.  And then I provide it to you and I

16   read it to you and you follow me.  Now, why do I do that?  I

17   do that because studies show you retain so much you hear.

18   You retain additional amounts if you read it.  And if you

19   read it and hear it at the same time, you retain the greatest

20   amount.

21          I know that there will be times you will want to

22   refer to the charge.  That's why you take it back to the jury

23   room with you.  And you will notice, and I will discuss it

24   towards the end here, about the verdict form.  The verdict

25   form is organized in the same way as the charge.  So as you

9:22-cr-00658-RMG    Date Filed 12/05/22    Entry Number 223    Page 4 of 71

1   are -- the verdict form can be your outline for addressing

2   the issues.  And then the verdict form will give you the

3   substantive law as to that.  So there is a little method to

4   my madness here.

5        Members of the jury, now that you have heard all the

6   evidence and the arguments of the lawyers, it is my duty to

7   instruct you on the law which applies to this case.  These

8   instructions will be in three parts:  First, the instructions

9   on the general rules that define and control your duties;

10  second, the instructions that state the rules of law you must

11  apply.  That is what the Government must prove to make the

12  case; and third, some rules for your deliberations.

13       First of all, let's talk about the general rules.

14  The duty of the jury is to find facts and follow law.  It is

15  your duty to find the facts from all the evidence in the

16  case.  To those facts, you must apply the law as I give it to

17  you.  You must follow that law whether you agree with it or

18  not.  And you must not be influenced by any personal likes or

19  dislikes, opinions, prejudice, or sympathy.  That means you

20  must decide the case solely on the evidence before you and

21  according to the law.  You will recall that you took an oath

22  promising to do so in the beginning of the case.

23       In following my instructions, you must follow all of

24  them and not single out some and ignore others.  They are all

25  equally important.  And you must not read into these

1    instructions or into anything I have said or done any

2    suggestion as to what verdict you should return.  That is a

3    matter entirely for you to decide.

4         Jury is to consider only this defendant.  You are

5    about to be asked to consider and decide independently

6    whether the Government has proven beyond a reasonable doubt

7    that defendant Laffitte is guilty of any of the crimes

8    charged.  You are not being asked whether any other person

9    has been proven guilty.  Your verdict should be based solely

10   upon the evidence or lack of evidence as to this defendant in

11   accordance with my instructions and with regard to whether

12   the guilt of other persons has or has not been proven.

13        Let's talk about evidence for a minute.  The

14   evidence from which you are to decide what the facts are

15   consists of, number one, the sworn testimony of witnesses,

16   both on direct and cross-examination, regardless of who

17   called the witness; second, the exhibits which have been

18   received into evidence; and, third, any facts to which all

19   the lawyers have agreed are stipulated.

20        It is also important to note what is not evidence.

21   Let me identify some of these.  In reaching your verdict, you

22   may consider only the testimony, stipulations, and exhibits

23   received into evidence.  Certain things are not evidence and

24   you may not consider them in deciding what the facts are.  I

25   will list several items which are not evidence:  Number one,

1   arguments and statements by lawyers are not evidence.  The

2   lawyers are not witnesses.  What they have said in their

3   opening statements, closing arguments, and at other times is

4   intended to help you interpret the evidence.  But it is not

5   evidence.  If the facts as you remember them differ from the

6   way the lawyers have stated them, your memory of them

7   controls.

8          Number two, questions and objections by lawyers are

9   not evidence.  Attorneys have a duty to their clients to

10  object when they believe a question is improper under the

11  Rules of Evidence.  You should not be influenced by the

12  objection or by the Court's ruling on it.  If the objection

13  was sustained, you should disregard the question of the

14  attorney.  If the objection was overruled, treat the answer

15  as you would any other.

16         Number three, testimony that has been excluded or

17  stricken or that you have been instructed to disregard is not

18  evidence and it must not be considered.

19         Fourth, lastly, you may not consider anything you

20  may have seen or heard when the court was not in session.

21  You are to decide the case solely on the evidence received at

22  the trial.

23         Let's talk about the difference between direct and

24  circumstantial evidence.  As I explained to you at the

25  beginning -- are we missing a page or anything there?  I just

9:22-cr-00658-RMG    Date Filed 12/05/22    Entry Number 223    Page 7 of 71
USCA4 Appeal: 23-4509    Doc: 12-2    Filed: 08/14/2023    Pg: 8 of 72

2115

1    want to make sure.

2         JUROR:  No.

3         THE COURT:  Good.  By the way, when you are copying

4    this many pages, you may sometimes make a mistake.  I always

5    want to make sure we've got it.  As I explained at the

6    beginning of this trial, there are two kinds of evidence,

7    direct and circumstantial.  Direct evidence is direct proof

8    of a fact, such as testimony of an eyewitness.

9    Circumstantial evidence is indirect evidence, that is proof

10   of a chain of facts from which you could find that another

11   fact exists, even though it has not been proven directly.

12        It is for you to decide whether a fact has been

13   proven by circumstantial evidence.  In making that decision,

14   you must consider all the evidence in light of reason, common

15   sense, and experience.

16        You are entitled to consider both kinds of evidence,

17   both direct and circumstantial.  The law permits you to give

18   equal weight to both, but it is for you to decide how much

19   weight to give any evidence.

20        Exhibits.  During the trial, several items were

21   received into evidence.  That might be an understatement.  A

22   lot of items were admitted into evidence.  And by the way,

23   they will go back to the jury room with you.  During the

24   trial, several items were received into evidence as exhibits.

25   These exhibits will be sent into the jury room with you when

1    you begin to deliberate.  You may examine the exhibits if you

2    think it would help you in your deliberations.

3         Charts and summaries received in evidence.  Certain

4    charts and summaries have been received into evidence to

5    illustrate facts brought out in the testimony of some

6    witnesses.  Charts and summaries are only as good as the

7    underlying evidence that supports them.  You should,

8    therefore, give them only such weight you think the

9    underlying evidence deserves.

10        Credibility of witnesses.  In deciding what the

11   facts are, you must consider all the evidence.  In doing

12   this, you must decide which testimony to believe and which

13   testimony not to believe.  You may disbelieve all or any part

14   of any witness's testimony.  In making that decision, you may

15   take into account a number of factors, including the

16   following:  Number one, was the witness able to see or hear

17   or know the things about which that witness testified?

18   Secondly, how well could the witness recall and describe

19   those things?  Number three, what was the witness's manner

20   while testifying?  Four, did the witness have any interest in

21   the outcome of this case or any bias or prejudice concerning

22   any party or any matter involved in the case?  Number five,

23   how reasonable was the witness's testimony when considered in

24   light of all the evidence in the case?  Number six, was the

25   witness's testimony contradicted by what that witness has

1    said or done at another time or by the testimony of other

2    witnesses or by other evidence?  And number seven, did the

3    witness change his or her testimony in an effort to conform

4    to other evidence in the case?

5         In deciding whether or not to believe a witness,

6    keep in mind that people sometimes forget things.  You need

7    to consider whether a contradiction is an innocent lapse of

8    memory or an intentional falsehood.  And that may depend on

9    whether it has to do with an important fact or with only a

10   small detail.

11        Impeachment - inconsistent statements or conduct.

12   The testimony of a witness may be discredited or impeached by

13   showing that he or she previously made statements that are

14   inconsistent with his or her present testimony.  The earlier

15   contradictory statements are admissible only to impeach the

16   credibility of the witness and not to establish the truth of

17   these sentences.  It is true -- it is the province of you,

18   the jury, to determine the weight, if any, to be given to the

19   testimony of a witness who has been impeached.

20        Number of witnesses.  The weight of the evidence is

21   not necessarily determined by the number of witnesses

22   testifying to the existence or nonexistence of any fact.  You

23   may find that the testimony of a smaller number of witnesses

24   as to a fact is more persuasive than that of a greater number

25   of witnesses or vice-versa.  And you may find that they may

1    not -- they are not persuasive at all.

2         Law enforcement witnesses.  You've heard the

3    testimony of various law enforcement officials.  The fact

4    that a witness may be employed by the federal government or

5    by state or local agency as a law enforcement official does

6    not mean that his or her testimony is necessarily deserving

7    of any more or less or greater or lesser weight than that of

8    another witness.  It is your decision, after reviewing all

9    the evidence, whether to accept the testimony of the law

10   enforcement witnesses and to give to that testimony whatever

11   weight, if any, you find it deserves.

12        Other acts of the defendant.  You've heard evidence

13   that the defendant may have committed certain acts or wrongs

14   not part of the pending charges against him.  Evidence of

15   such other acts or wrongs should be considered to prove --

16   should not be considered to prove a defendant's bad character

17   in order to show on a particular occasion that the defendant

18   acted in accordance with that character.  You may not

19   consider this evidence in determining if the defendant

20   committed the acts charged.  Such evidence may be considered

21   by you, however, for the limited purpose of proving the

22   defendant's motive, intent, preparation, plan, knowledge, or

23   absent of mistake to commit or in committing the crime

24   charged.

25        Expert testimony.  You have also heard testimony

1    from expert witnesses.  An expert is allowed to express his

2    or her opinion on those matters about which he or she has

3    special knowledge and training.  Expert testimony is

4    presented to you on the theory that someone who is

5    experienced in the field can assist you in understanding the

6    evidence or in reaching an independent decision on the facts.

7    In weighing expert's testimony, you may consider the expert's

8    qualifications, opinions, reasons for testifying, as well as

9    all of the other considerations ordinarily applied when you

10   are deciding whether or not to believe a witness's testimony.

11   You may give expert testimony whatever weight you find it

12   deserves in light of all the evidence in the case.  You

13   should not, however, accept an expert witness's testimony

14   merely because he or she is an expert on a particular matter,

15   nor should you substitute it for your own reason, judgment,

16   and common sense.  The determination of the facts in this

17   case rest solely with you, ladies and gentlemen of the jury.

18           The Government as a party.  You are to perform the

19   duty of finding the facts without bias or prejudice as to any

20   party.  You are to perform your final duty in an attitude of

21   complete fairness and impartiality.  The fact that the

22   prosecution is brought in the name of the United States of

23   America entitles the Government to no greater consideration

24   than that afforded to any other party.  By the same token,

25   the Government is entitled to no less consideration.  All

1    parties stand as equals at the bar of justice.

2           This case is important to the Government for the

3    enforcement of criminal laws as a matter of prime concern to

4    the community.  Equally, it is important to the defendant who

5    is charged with serious crimes.

6           Audio recording and transcript.  Both an audio

7    recording and certain conversations and -- of certain

8    conversations and a transcript of the audio recording have

9    been admitted into evidence.  If you detect any discrepancy

10    between the transcript and the audio recording, you may use

11    the transcript as a guide in following the audio recording,

12    but you are only to consider as evidence what you hear on the

13    audio recording.

14           Let's talk about the presumption of innocence,

15    burden of proof, and reasonable doubt.  I instruct you that

16    you must presume the defendant to be innocent of the crimes

17    charged.  Thus, the defendant, although accused of certain

18    crimes, begins the trial with a clean slate, meaning with no

19    evidence of any kind.  The defendant, of course, is not on

20    trial for any act or crime other than the crimes charged

21    against him.  The law permits nothing but legal evidence

22    presented before the jury in court to be considered in

23    support of any charge against the defendant.  The presumption

24    of innocence alone, therefore, is sufficient to acquit the

25    defendant.

1      The burden is always upon the prosecution to prove

2  the guilt beyond a reasonable doubt.  This burden never

3  shifts to the defendant.  For the law never imposes upon a

4  defendant in a criminal case the burden or duty of calling

5  any witnesses or producing any evidence.  The defendant is

6  not obligated to produce any evidence by cross-examining the

7  witnesses for the Government.

8      The Government is not required to prove the

9  defendant's guilt beyond all possible doubt.  The test is one

10  of reasonable doubt.  A reasonable doubt is a doubt based

11  upon reason and common sense, the kind of doubt that would

12  make a reasonable person hesitate to act.  Proof beyond a

13  reasonable doubt must, therefore, be proof of such a

14  convincing character that a reasonable person would not

15  hesitate to rely and act upon it in the most important of his

16  or her own affairs.

17      Unless the Government proves beyond a reasonable

18  doubt that the defendant has committed each and every element

19  of the offenses charged, you must find the defendant not

20  guilty of the offenses.  If the jury views the evidence in

21  the case as reasonably permitting either of two conclusions,

22  one of them is innocence and the other of guilt, the jury

23  must, of course, adopt the conclusion of innocence.

24      Sympathy.  Under your oath as jurors, you are not to

25  be swayed by sympathy.  You are to be guided solely by the

1      evidence in this case.  And the crucial question you must ask

2      yourselves as you sift through the evidence is this:  Has the

3      Government proven the guilt of the defendant beyond a

4      reasonable doubt?  It is for you alone to decide whether the

5      Government has proven that the defendant is guilty of the

6      crimes charged solely on the basis of the evidence and

7      subject to the law as I charge you.  If you let fear or

8      prejudice or bias or sympathy interfere with your thinking,

9      there is a risk that you will not arrive at a true and just

10     verdict.

11          Punishment.  The question of possible punishment of

12     the defendant is of no concern to the jury and should not in

13     any sense enter or influence your deliberations.  If a

14     defendant in any case is found guilty, the duty of imposing a

15     sentence rests exclusively upon the Court.  Your function is

16     to weigh the evidence in this case and to determine whether

17     or not the Government has proven that the defendant is guilty

18     beyond a reasonable doubt, solely upon the basis of such

19     evidence.  Under your oath as jurors, you cannot allow a

20     consideration of the punishment which may be imposed upon a

21     defendant if he is convicted to influence your verdict in any

22     way.

23          Separate consideration.  The Government has charged

24     the defendant with six separate charges.  Each charge is

25     referred to as a separate count.  The number of counts is not

1    evidence of guilt.  And this should not influence your

2    decision in any way.  It is your duty to consider the

3    evidence as it relates to each count by itself and to return

4    a verdict for each count.  For each count you must decide

5    whether the Government has presented proof beyond a

6    reasonable doubt that the defendant is guilty of that

7    particular count.  Your decision on one count, whether it is

8    guilty or not guilty, should not influence your decision on

9    the other counts unless you are specifically so instructed.

10           Now let me turn us to the instructions on the law.

11   With these preliminary instructions in mind, let us turn now

12   to the specific charges against the defendant.  I remind you

13   that a charge is only an accusation and must not be

14   considered by you as evidence of the guilt of the defendant.

15           The defendant, Russell Laffitte, has been charged

16   with six offenses.  The offenses are:  Count 1, conspiracy to

17   commit wire fraud and bank fraud; 2, bank fraud; 3, wire

18   fraud; Counts 4 through 6, three different counts of

19   misapplication of bank funds.

20           The defendant has pled not guilty to all charges.

21   The defendant is presumed innocent and the Government carries

22   the burden of proving the defendant's guilt beyond a

23   reasonable doubt.  You may decide based on the evidence

24   presented at trial and the law to find the defendant not

25   guilty, guilty of one or more counts, or guilty of all

1    counts.  Ladies and gentlemen, that is your decision to make.

2              I will now give you instructions on each count.

3    Count 1, conspiracy to commit wire fraud and bank fraud.

4    Count 1 charges defendant with conspiracy to commit wire

5    fraud and bank fraud.  The Government alleges that the

6    conspiracy began no later than July of 2011 and continued

7    until at least October 2021.  It is a crime to conspire with

8    someone else to commit wire fraud or bank fraud.  Count 1

9    alleges that the object of the conspiracy was for the

10   defendant and the bank customer, which the record shows was

11   Alex Murdaugh, to obtain money and property by means of false

12   and fraudulent pretenses, representations, and promises, and

13   to defraud Murdaugh's personal injury clients.

14             Count 1 alleges that in furtherance of the

15   conspiracy, the defendant committed overt acts in furtherance

16   of the conspiracy as follows:

17             A.  On or about December 21, 2011, the defendant

18   negotiated and distributed checks for $309,581.46 and

19   $325,000, funds belonging to Hakeem Pinkney and Natasha

20   Thomas, as directed by Alex Murdaugh;

21             B.  On or about August 20, 2012, and continuing

22   through September 4, 2012, the defendant negotiated and

23   distributed a check for $25,245.06, funds belonging to

24   Natasha Thomas as directed by Alex Murdaugh;

25             C.  On or about February 8, 2013, the defendant

1    negotiated and distributed $151,726.05 to Hannah Plyler at

2    Alex Murdaugh's direction, knowing that the money belonged to

3    the estate of Donna Badger and/or the estate's beneficiaries.

4    Under the circumstance -- under the charges pending, Arthur

5    Badger and the estate of Donna Badger are referred to

6    collectively as the estate of Donna Badger.

7           Before we discuss bank fraud and wire fraud, I'm

8    going to tell you about the law of conspiracy generally.  A

9    conspiracy is an agreement between two or more persons to

10   join together to accomplish some unlawful purpose.  It is a

11   kind of partnership in crime in which each member becomes the

12   agent of every other member.  In order to find the defendant

13   guilty of the conspiracy charged in Count 1, the Government

14   must prove the following three elements beyond a reasonable

15   doubt:  Number one, that two or more people entered into a

16   conspiracy, agreement or understanding, to commit an unlawful

17   act; secondly, that at some time during the existence or life

18   of the conspiracy, agreement or understanding, the defendant

19   knew of the unlawful purpose of the agreement; and three,

20   that the defendant joined in the agreement willfully with the

21   intent to further the unlawful purpose.

22          The Government must prove that the conspiracy came

23   into existence during or reasonably near the period of time

24   charged, and that the defendant knowingly joined in the

25   conspiracy within or reasonably near the same time period.

USCA4 Appeal: 23-4509    Doc: 12-2    Filed: 08/14/2023    Pg: 19 of 72
9:22-cr-00658-RMG    Date Filed 12/05/22    Entry Number 223    Page 18 of 71

2126

1        A conspiracy makes exist even if a conspiraator does

2   not agree to commit or facilitate each and every part of the

3   substantive offense.  The partners in a criminal plan must

4   agree to pursue the same criminal objective and may divide up

5   the work, yet, each is responsible for the acts of the other.

6        You may find that the defendant was a member of the

7   conspiracy only from the evidence presented that relates to

8   his own conduct, acts, or statements made in connection with

9   this conspiracy.  Along with other evidence, the statements

10  and actions of an alleged co-conspirator may be considered in

11  determining the existence of a conspiracy.

12       The essence of the crime of conspiracy is an

13  agreement to commit a criminal act.  But there does not have

14  to be evidence that the agreement was specific or explicit.

15  By its very nature, a conspiracy is clandestine and covert,

16  thereby frequently resulting in little direct evidence of

17  such an agreement.  Therefore, the Government may prove a

18  conspiracy by direct or circumstantial evidence.

19  Circumstantial evidence tending to prove a conspiracy may

20  consist of a defendant's relationship with another member of

21  the a conspiracy, the length of the association, and the

22  defendant's attitude and conduct and the nature of the

23  conspiracy.

24       Because the essence of a conspiracy offense is the

25  making of the agreement itself, it's not necessary for the

1   Government to prove that the conspirators actually succeeded

2   in accomplishing their unlawful plan.

3        One may be a member of a conspiracy without knowing

4   the full scope of the conspiracy and without taking part in

5   the full range of its activities or over the whole period of

6   its existence.  The conspiracy does not need a discrete,

7   identifiable organizational structure.  The fact that a

8   conspiracy is loosely knit, haphazard, or ill-conceived, does

9   not render it any less a conspiracy.  The Government need not

10  prove that the defendant knew the particulars of the

11  conspiracy.  It is sufficient that if he played only a miner

12  part in the conspiracy, thus, a variety of conduct can

13  constitute participation in a conspiracy.

14        Once it has been shown that a conspiracy exists, the

15  evidence need only establish a slight connection between a

16  defendant and the conspiracy.  The Government must prove --

17  must, however, produce evidence to prove the defendant's

18  connection to the conspiracy beyond a reasonable doubt.

19        A conspirator must intend to further an endeavor

20  which, if completed, would be a federal crime.  It is enough

21  that the defendant adopts the goal of furthering or

22  facilitating the criminal endeavor through participation.  He

23  may do so in any number of ways without agreeing to undertake

24  all the acts necessary for the crime's completion.  One can

25  be a conspirator by agreeing to facilitate only some of the

1    acts leading to the criminal objective.

2           The defendant's presence at the scene of criminal

3    activity is material and probative in the totality of the

4    circumstances in determining the defendant's participation in

5    the conspiracy.  You may find knowledge and voluntary

6    participation from evidence of presence when the presence is

7    such that it would be unreasonable for anyone other than a

8    knowledgeable participant in the conspiracy to be present.

9    But mere presence at the scene of an alleged transaction or

10   event, mere association with persons conducting the alleged

11   activity, and mere similarity of conduct among various

12   persons, and the fact they may have been associated with each

13   other and may have assembled together and discussed common

14   aims and interest, does not necessarily establish proof of

15   the existence of a conspiracy.  Also, a person who has no

16   know of a conspiracy but who happens to act in a way which

17   advances some object or purpose of the conspiracy, does not

18   thereby become a conspirator.

19          As I previously stated, Count 1 charges the

20   defendant with conspiring to commit wire fraud or bank fraud.

21   Under the law -- and/or bank fraud.  Under the law

22   participating in a conspiracy to commit a crime is an

23   entirely separate and distinct charge for the actual

24   violation of the substantive offense that may be the object

25   of the conspiracy.  In addition, the Government need not

1    prove a conspiracy to commit both wire fraud and bank fraud.

2    If the elements of either are proven as the object of the

3    conspiracy, it is sufficient to sustain a conviction on Count

4    1.

5         The defendant's liability for substantive offenses

6    committed by a co-conspirator.  A defendant may be held

7    liable for the -- for other crimes committed by a

8    co-conspirator during the life of the conspiracy when the

9    commission of such other acts was reasonably foreseeable and

10   in furtherance of and within the scope of the conspiracy.

11   Thus, under these circumstances, a defendant may be found

12   guilty of these other crimes committed by his co-conspirator

13   even though he did not participate directly in the acts

14   constituting the offense.

15        If you find that the Government has proven the

16   defendant guilty of conspiracy as charged in Count 1 beyond a

17   reasonable doubt, and if you find beyond a reasonable doubt

18   that while the defendant was a member of the conspiracy, the

19   defendant's co-conspirator committed the offenses in Count 2

20   and/or Count 3 in furtherance of or as reasonably foreseeable

21   or natural consequence and within the scope of the

22   conspiracy, then you may find the defendant guilty of Count 2

23   and/or Count 3.

24        Let's talk about Count 2.  We were first talking

25   about conspiracy.  We are now moving to what we call

1    substantive offenses.  The first of these Count 2 is bank

2    fraud.  Count 2 charges the defendant with bank fraud and

3    aiding and abetting bank fraud.  The Government alleges that

4    on or about September 13th, 2013, the defendant, with Alex

5    Murdaugh, knowingly executed and attempt to execute a scheme

6    or artifice to obtain money and funds under the custody and

7    control of Palmetto State Bank, an FDIC financial

8    institution, by means of false and fraudulent pretenses,

9    representations, and promises, and aided and abetted Alex

10   Murdaugh by negotiating and distributing a check totaling

11   $101,369.49 to Hannah Plyler knowing that the funds belonged

12   to the estate of Donna Badger and/or the estate's

13   beneficiaries.

14          It is a crime to commit bank fraud.  For you to find

15   the defendant guilty, the Government must prove each of the

16   following four elements beyond a reasonable doubt:  Number

17   one, that the defendant knowingly executed or attempted to

18   execute a scheme or artifice to obtain any of the moneys,

19   funds, credits, assets, securities, or other property owned

20   by or under the custody of a financial institution by means

21   of false and fraudulent pretenses, representations, or

22   promises; secondly, that the false or fraudulent pretenses,

23   representation or promises were about a material fact; third,

24   that the defendant executed and attempted to execute the

25   scheme with the intent to defraud; and fourth, that at the

1    time of the execution of this scheme, the financial

2    institution was federally insured.

3         Let's look at a couple of these definitions.  A

4    scheme or artifice includes any deliberate plan or course of

5    action intended to deceive or cheat others.

6         To "defraud" means wronging one in his property

7    rights by dishonest methods or schemes and usually signifies

8    the deprivation of something of value by trick, deceit,

9    chicanery, or overreaching.

10        A "scheme or artifice to obtain" means to pursue any

11   plan or course of action intended to indirectly obtain assets

12   of a financial institution by false or fraudulently

13   pretenses, representations, or promises.

14        "By means of" can be satisfied when the alleged

15   falsity or fraud is the mechanism naturally inducing a bank

16   to part with money in its control.

17        A statement or representation is false or fraudulent

18   if known to be untrue or made with reckless indifference as

19   to the truth or falsity, and made or caused to be made with

20   the intent to deceive or defraud or when it constitutes a

21   half truth or effectively omits or conceals a material fact,

22   provided it is made with the intent to defraud.

23        To act with the "intent to defraud" means to act

24   with a specific intent to deceive or cheat.  Ordinarily for

25   the purpose of either causing some financial loss to another

1    or bringing about some financial gain to oneself.  It is not

2    necessary, however, to prove that anyone who was, in fact,

3    defrauded, as long as it's establish that the defendant acted

4    with the intent to defraud or mislead.

5         A statement is material if it has the natural

6    tendency to influence or is capable of influencing the

7    decision-making body to which it was addressed.  It is

8    irrelevant whether the false statement actually influenced or

9    affected the decision-making process of a fact-finding body.

10   A false statement's capacity to influence words must be

11   measured at the point in time that the statement was made.

12   In other words, it concerns what a reasonable financial

13   institution would want to know in negotiating a particular

14   transaction.

15        A "financial institution" as used in the bank fraud

16   charge, means an insured depository institution, to include a

17   banker insured by the Federal Deposit Insurance Corporation.

18        I mentioned a moment ago that Count 2 charges the

19   defendant with both bank fraud and aiding and abetting bank

20   fraud.  The Government has also charged the defendant with

21   aiding and abetting in Counts 3 through 6.  Simply put,

22   aiding and abetting means to assist the perpetrator of a

23   crime.  After I address each of the counts, I will address in

24   detail the requirements for the Government to establish a

25   defendant guilty of aiding and abetting the crimes of

1    another.

2         Count 3, wire fraud.  Count 3 charges the defendant

3    with wire fraud and aiding and abetting wire fraud.  Count 3

4    alleges that on or about September 13, 2013, the defendant,

5    with Alex Murdaugh, devised a scheme and artifice to defraud

6    and to obtain money and property by means of false and

7    fraudulent pretenses, representations, and promises,

8    transmitted and caused to be transmitted by means of wire and

9    interstate commerce, writings, signs, and signals, for the

10   purposes of executing such a scheme and artifice, and that he

11   obtained funds as a personal representative belonging to the

12   estate of Donna Badger and/or the estate's beneficiaries, and

13   distributed $33,789.83 to Murdaugh's personal bank account,

14   affecting a financial institution.

15        It is a crime to commit wire fraud.  For you to find

16   the defendant guilty of wire fraud, the Government must prove

17   each of the following five elements beyond a reasonable

18   doubt:  Number one, the defendant knowingly devised or

19   intended to devise a scheme or artifice to defraud or for

20   obtaining money or property by means of false or fraudulent

21   pretenses, representations, or promises; number two, the

22   false or fraudulent pretenses, representations, or promises,

23   were about a material matter; number three, the defendant

24   acted with the intent to defraud; number four, in advancing,

25   furthering, or carrying out this scheme, the defendant

1    transmitted or caused to be transmitted by wire communication

2    in interstate or foreign commerce any writings, signs, or

3    signals; and number five, that the scheme affected a

4    financial institution.

5         A "scheme or artifice" includes any plan or course

6    of action intended to deceive others and to obtain by either

7    false or fraudulent pretenses, representations, or promises,

8    money from persons who were so deceived.

9         A scheme or artifice to defraud may describe a

10   departure from fundamental honesty, moral uprightness, or

11   fair play and candid business dealings in the general life of

12   the community.  There must be proof of misrepresentation,

13   false statement, or omission calculated to deceive a person

14   of ordinary prudence and comprehension.

15        A statement or representation is false or fraudulent

16   if known to be untrue or made with reckless indifference as

17   to the falsity made or caused to be made with the intent to

18   deceive or defraud, or when it constitutes a half truth, or

19   effectively omits or conceals a material fact, provided it is

20   made with the intent to defraud.

21        A scheme to defraud requires that the Government

22   prove that the defendant acted with the specific intent to

23   deceive or cheat for the purpose of either causing some

24   financial loss to another or bringing about some financial

25   gain to oneself.  Thus, the Government must prove beyond a

1    reasonable doubt that the defendant intended to deceive

2    someone through the scheme.  A scheme to defraud can be shown

3    by deceptive acts or contrivances intended to hide

4    information, mislead, avoid suspicion, or avert further

5    inquiry into a material matter.

6         It is not necessary, however, to prove that anyone

7    was, in fact, defrauded, as long as it is established that

8    the defendant acted with the intent to defraud or mislead.

9         A statement is material if it has the natural

10   tendency to influence or is capable of influencing the

11   decision-making body to which it was addressed.  It is

12   irrelevant whether the false statement actually influenced or

13   affected the decision-making process of the agency or

14   fact-finding body.  A false statement's capacity to influence

15   must be measured at the point in time that the statement was

16   made.

17        The Government is not required to prove that the

18   material sent by wire was itself false or fraudulently or

19   that the alleged scheme actually succeeded in defrauding

20   anyone, or that the use of the wire was intended as specific

21   or exclusive means of accomplishing the alleged fraud.

22        What the Government must prove beyond a reasonable

23   doubt is that the defendant knowingly devised or intended to

24   devise a scheme to defraud that was substantially the same as

25   alleged in Count 3, and that the use of the wire was closely

USCA4 Appeal: 23-4509   Doc: 12-2      Filed: 08/14/2023   Pg: 29 of 72
9:22-cr-00658-RMG   Date Filed 12/05/22   Entry Number 223   Page 28 of 71

2136

 1   related to the scheme, and that the defendant either wired

 2   something or caused it to be wired for the purposes of

 3   carrying out of the scheme.

 4        To establish the crime of wire fraud, the Government

 5   must prove beyond a reasonable doubt that an interstate

 6   communication or facility was used in furtherance of the

 7   scheme or was incidental to the essential -- to an essential

 8   part of the scheme.  This requires a showing that the

 9   defendant transmitted or caused to be transmitted any

10   writing, signs, or signals of some kind by means of wire

11   communication in interstate commerce.  Interstate commerce

12   includes commerce between one state and another.

13        It is not necessary for the defendant to be directly

14   or personally involved in the interstate transmission, so

15   long as such transmission was reasonably foreseeable in the

16   execution of the alleged scheme and which the defendant is

17   accused of participating.  This does not mean that the

18   defendant must have specifically authorized others to make

19   the transmission.  When one does an act with knowledge that

20   the use of interstate transmission will follow in the

21   ordinary course of business or where such use can be

22   reasonably foreseen, even though not actually intended, then

23   he causes the interstate transmission to be made.  The

24   interstate transmission need not in and of itself be

25   fraudulent to constitute an offense under this statute.  That

1    material that was transmitted may be totally innocent.  The

2    use of the interstate transmission does not need to be an

3    essential part of the fraudulent scheme.  But the Government

4    must prove that the interstate transmission played a

5    significant part in the execution of the scheme.

6         A "financial institution" includes an insured

7    depository institution, to include a bank insured by the

8    Federal Deposit Insurance Corporation.  The scheme to defraud

9    must have affected that -- a financial institution, meaning

10   that the financial institution itself was victimized by the

11   fraud, as opposed to the scheme's mere utilization of the

12   financial institution and the transfer of funds.

13        Now, let's move on to Counts 4 through 6, which all

14   involve allegations of misapplication of bank funds.  Counts

15   4, 5, and 6 charge the defendant with misapplication of bank

16   funds in aiding and abetting the misapplication of bank

17   funds.  These three counts charge violations of the same

18   statute.  And I will group them together to simplify the

19   instructions.  You must consider each count and the evidence

20   pertaining to each count separately.

21        Count 4 alleges that on or about October 28, 2021,

22   the defendant, while an officer, director, agent, or employee

23   of Palmetto State Bank, a financial institution insured by

24   the FDIC, with the intent to injure or defraud the bank,

25   willfully misapplied, abstracted, and purloined moneys,

1    funds, and credits entrusted to the custody and care of the

2    bank, by distributing $680,000 to the Peters Murdaugh Parker

3    Eltzroth & Detrick Law Firm, without notice to or consent

4    from the bank Board of Directors, knowing that he previously

5    fraudulently transferred the money to Alex Murdaugh.

6         Count 5 alleges that on or about July 15, 2021, and

7    continuing until August 18th, 2021, the defendant, while an

8    officer, director, agent, or employee of the bank, a

9    financial institution insured by the FDIC, with the intent to

10   injure or defraud the bank, willfully misapplied, abstracted,

11   and purloined moneys, funds, and credits entrusted to the

12   custody and care of the bank by funding a $750,000 commercial

13   loan to Alex Murdaugh for beach house renovations with

14   preferential lending terms, including insufficient

15   collateral, knowing that the loan was essentially unsecured

16   and that the loan proceeds would be and were used for other

17   purposes, namely, to pay another attorney and to cover

18   hundreds of thousands of dollars in overdrafts of Murdaugh's

19   personal account at the bank.

20        Count 6 alleges that on or about February 20, 2015,

21   the defendant, while an officer, director, agent, or employee

22   of the bank, a financial institution insured by the FDIC,

23   with the intent to injury or defraud the bank, willfully

24   misapplied, abstracted, and purloined moneys and funds and

25   credits entrusted to the custody of the bank by funding a

1    $500,000 line of credit to Alex Murdaugh for farming, and

2    thereafter, issued a $284,787.52 cashier check knowing that

3    the proceeds would be and were to be used for other purposes,

4    namely, to pay off loans previously extended from Hannah

5    Plyler's conservatorship account.

6            It is a crime to misapply bank funds.  For you to

7    find the defendant guilty, the Government must prove each of

8    the five elements beyond a reasonable doubt:  Number one, the

9    defendant was an officer, agent, or employee, or connected in

10   some capacity with the bank at the time charged; second, the

11   accounts of the bank were federally insured at the time as

12   alleged; number three, the defendant abstracted, purloined,

13   or misapplied more than $1,000 in moneys, funds, or credits

14   belonging to or entrusted to the care of the bank; number

15   four, the defendant did so willfully; and five, the defendant

16   did so with the intent to inflict financial injury to the

17   bank or to defraud the bank.

18           To "abstract" means to take or withdraw from the

19   possession or control of the bank the moneys and funds

20   alleged to be so abstracted, without the knowledge and

21   consent of the bank, and with the intent to injure or defraud

22   the bank.

23           To "misapply" a bank's money or property means the

24   willful conversion or taking by a bank employee of such money

25   or property for his own use or benefit or the use and benefit

9:22-cr-00658-RMG    Date Filed 12/05/22    Entry Number 223    Page 32 of 71

2140

1    of another whether or not such money or property has been

2    entrusted to its care and with the intent to defraud.  It is

3    not necessary that the defendant be in actual possession of

4    the money or property by virtue of a trust committed to him.

5         "Intent to injure or defraud" can be established by

6    proving that the defendant acted in reckless disregard of the

7    bank's interest.  To act with intent to injure or defraud

8    means to act with intent to deceive or cheat for the purpose

9    of causing a financial loss to the bank, although it is not

10   necessary that the bank has suffered an actual loss, or to

11   bring financial gain or benefit to one's self.

12        Intent to injure includes only pecuniary loss to the

13   bank.  The evidence does not have to show that the bank

14   actually lost money as a result of a misapplication of funds,

15   nor is proof of the personal gain necessary.  It is

16   sufficient that the defendant at least temporarily deprived

17   the bank of the possession, control, or use of the funds.  It

18   is not essential that the proof show that the defendant

19   intended to deprive the bank of its property permanently.

20        Now, I want to go back to this issue of aiding and

21   abetting, which applies to Counts 2, 3, 4, 5, and 6.  I

22   previously mentioned to you that Counts 3 -- 2 through 6 for

23   bank fraud, wire fraud, and misapplication of bank funds,

24   also charge the defendant with violating the aiding and

25   abetting statute, which makes it a crime to aid and abet

1   another person to commit a crime.  The guilt of an accused in

2   a criminal case may be established without proof that he

3   personally did every act constituting the offense alleged.

4   The law recognizes that ordinarily anything a person can do

5   for himself may also be accomplished by him through the

6   direction of another person as his agent or by acting in

7   concert with or under the direction of another person or

8   persons in a joint effort or enterprise.

9        In order for the defendant to be found guilty of

10  aiding and abetting the commission of the crime charged in

11  Counts 2 through Count 6, the Government must prove beyond a

12  reasonable doubt the following:  One, the crime charged was,

13  in fact, committed by someone other than the defendant;

14  number two, the defendant participated in the criminal

15  venture as in something that he wished to bring about; number

16  three, the defendant associated himself with the criminal

17  venture knowingly and voluntarily; and four, the defendant

18  sought by his actions to make the criminal venture succeed.

19       Simply put, aiding and abetting means to assist the

20  perpetrator of the crime.  One who aids and abets, counsels,

21  commands, induces, or procures the commission of an act is

22  responsible for that act as if he committed it directly.

23       To prove association, the Government must show

24  beyond a reasonable doubt that the defendant shared in the

25  criminal intent of the person committing the crime.  This

2142

requires evidence that the defendant was aware of their criminal intent and the unlawful nature of the criminal acts.

Evidence that the defendant merely brought about the arrangement that made the criminal act possible does not alone support a conclusion that a defendant was aware of the criminal nature of the act.

The Government is not required to prove that the defendant participated at every stage of the illegal venture, but the Government is required to prove beyond a reasonable doubt that the defendant participated at some stage, and that the participation was accompanied by knowledge of the result and the intent to bring about that result.

The Government must prove beyond a reasonable doubt that the defendant engaged in some affirmative conduct, that is, that the defendant committed an act designed to aid in the success of the venture, and that the defendant shared in the criminal intent of the person the defendant was aiding and abetting.

It is not necessarily the person who aided and abetted be tried and convicted of the offense.  The Government must prove beyond a reasonable doubt that the underlying crime was committed by some person and that the defendant aided and abetted that person.

If two persons act in concert with a common purpose or design to commit an unlawful act, then the act of one of

1    them in furtherance of the unlawful act is in the law

2    considered the act of the other.

3            The Government must prove beyond a reasonable doubt

4    that the defendant counseled and advised the commission of

5    the crime, and that the counsel and advice influenced the

6    perpetration of the crime.  There is no requirement that

7    fixes a time limit within which the crime must be committed.

8            If the person who was assisted or induced commits

9    the crime he was assisted or induced to commit, then the

10   person who assisted or induced him is guilty of aiding and

11   abetting.  The Government must prove beyond a reasonable

12   doubt that the defendant participated in the crime charged.

13           The mere presence of a defendant where a crime is

14   being committed, even coupled with knowledge by a defendant

15   that the crime is being committed or the mere acquiescence by

16   a defendant in the criminal conduct of others even when

17   guilty knowledge is not -- even with guilty knowledge, is not

18   sufficient to establish guilt.  However, the jury may find

19   knowledge and voluntary participation from evidence or

20   presence when the presence is such that it would be

21   unreasonable for anyone other than a knowledgeable

22   participant to be present.

23           Let me address some definitions here.  To commit an

24   act "intentionally" is to do so deliberately and not by

25   accident.

1          To act "knowingly" is to act with knowledge of the

2    facts that constitute the offense, but not necessarily with

3    knowledge that the facts amount to illegal conduct.  An act

4    is done knowingly if the defendant is aware of the act and

5    does not act through ignorance, mistake, or accident.  And

6    the Government is not required to prove that a defendant knew

7    that his acts or omissions were unlawful.

8          A person acts "willfully" if he acts intentionally

9    and purposely and with the intent to do something the law

10   forbids, that is, with the bad purpose to disobey or to

11   disregard the law.  The person need not be aware of the

12   specific law or rule that his conduct may be violating, but

13   he must act with the intent to do something that the law

14   forbids.  A willful act is one undertaken with a bad purpose.

15   In other words, in order to establish a willful violation of

16   a statute, the Government must prove that the defendant acted

17   with knowledge that his conduct was unlawful.

18         Motive.  Intent and motive should never been

19   confused.  Motive is what prompts a person to act or not to

20   act.  Intent refers to the state of mind with which an act is

21   done or omitted.  Personal advancement and financial gain are

22   two well-recognized motives for much of human conduct.  These

23   motives may prompt one person to do voluntarily acts of good

24   and another person to voluntary acts of crime.  Good motive

25   alone is never a defense where the act done or omitted is a

9:22-cr-00658-RMG    Date Filed 12/05/22    Entry Number 223    Page 37 of 71

1    crime.  So the motive of the defendant is immaterial, except

2    insofar as evidence of motive may aid you in determining --

3    in your determination of state of mind or intent.

4         Proof of knowledge or intent.  The intent of a

5    person or the knowledge that a person possesses at any given

6    time may not ordinarily be proven directly because there is

7    no way of directly scrutinizing the workings of the human

8    mind.  In determining that the issue of what a person knew or

9    what a person intended at a particular time, you may consider

10   any of the statements made or acts done by the person, and

11   all other facts and circumstances received in evidence that

12   may aid you in the determination of that person's knowledge

13   or intent.

14        It is reasonable to infer that a person ordinarily

15   intends the natural and probable consequences of acts

16   knowingly done or knowingly omitted.  The jury may draw the

17   inference that the defendant intended all the consequences

18   which one standing in like circumstances and possessing like

19   knowledge should reasonably expected the result from any act

20   knowingly done or knowingly omitted by the defendant.  Any

21   such inference drawn is entitled to be considered by the jury

22   in determining whether or not the Government has proven --

23   has proved beyond a reasonable doubt that the defendant

24   possessed the required criminal intent.

25        Willful blindness.  The element of knowledge may be

1   satisfied by inferences drawn from proof that a defendant

2   deliberately closed his eyes to what would otherwise have

3   been obvious to him.  A finding beyond a reasonable doubt of

4   a conscious purpose to avoid enlightenment would permit an

5   inference of knowledge.  Stated another way, a defendant's

6   knowledge of a fact may be inferred from willful blindness to

7   the existence of a fact.  A showing of negligence or mistake

8   is not sufficient to support a finding of willfulness or

9   knowledge.  It is entirely up to you to determine whether you

10   find any deliberate closing of the eyes and inferences to be

11   drawn from any such evidence.

12        Good faith.  The defendant has raised the defense of

13   good faith.  Good faith is a complete defense to the charged

14   offenses, because good faith is simply inconsistent with the

15   intent to defraud or to obtain money or property by means of

16   false or fraudulent pretenses, representations, or promises.

17   While the term "good faith" has no precise definition, it

18   encompasses, among other things, a belief or opinion honestly

19   held in absence of malice or ill will, and an intention to

20   avoid taking unfair advantage of another.

21        A person who acts on a belief or an opinion honestly

22   held is not punishable for wire fraud or bank fraud merely

23   because the belief or opinion turns out to be inaccurate,

24   incorrect, or wrong.  An honest mistake does not rise to the

25   level of intent to defraud.

1        However, even though the defendant honestly holds a

2    certain opinion or belief, a defendant does not act in good

3    faith if he also intentionally makes or gives falls or

4    fraudulent representations, promises, or responses to others.

5    No amount of honest belief that an enterprise will eventually

6    succeed can excuse willful misrepresentations.

7        If the defendant participated in the scheme to

8    defraud, then a belief by the defendant, if such a belief

9    existed, that ultimately everything would work out so that no

10   one would lose any money does not require a finding by you

11   that the defendant acted in good faith.  If the defendant

12   participated in the scheme for the purpose of causing some

13   financial or property loss to another, then no amount of

14   honest belief on the part of the defendant that the scheme

15   would not cause a loss would excuse fraudulent actions or

16   fraudulent representations by him.  A defendant's belief that

17   the victim of the fraud would be paid in the future or will

18   sustain no economic loss is no defense to the crimes charged.

19   The intent to repay eventually is not relevant to the

20   question of guilt.

21       The burden of proving good faith does not rest with

22   the defendant.  Because the defendant does not have an

23   obligation to prove anything in the case.  Rather, the burden

24   is on the Government to prove its case beyond a reasonable

25   doubt.

1        Good character.  When a defendant is offered

2   evidence of good general reputation for honesty and

3   integrity, you should consider such evidence along with all

4   other evidence in the case.  Evidence of a defendant's

5   reputation inconsistent with those traits of character

6   ordinarily involved in the commission of a crime charged may

7   give rise to reasonable doubt, so that you may think it is

8   improbable that a person of good character in respect to

9   those traits would commit such a crime.  You should always

10  bear in mind, however, that the law never imposes upon a

11  defendant the burden or duty of calling any witnes or

12  producing any evidence.

13       Reputation of the defendant's good character when

14  put into evidence is a fact which you should consider with

15  the other facts in the case.  And further, that reputation

16  for good character is a fact which, when considered in

17  connection with all the other evidence in the case, may, like

18  other facts, generate a reasonable doubt.

19       Now, let's talk about rules for your deliberations.

20  I have now instructed you on the law relating to the counts

21  brought against the defendant Laffitte.  I will now give you

22  a few final instructions regarding your deliberations and

23  return a verdict.

24       You, the jury, will select your foreperson.  The

25  foreperson will preside over the deliberations and speak for

USCA4 Appeal: 23-4509    Doc: 12-2    Filed: 08/14/2023    Pg: 42 of 72
9:22-cr-00658-RMG    Date Filed 12/05/22    Entry Number 223    Page 41 of 71

2149

1    the jury here in court.  When you retire to the jury room,

2    you should discuss the case with your fellow jurors, and

3    reach an agreement, if you can do so.

4         And let me say this.  I will send you out when I

5    finish this charge.  And you are not yet to begin your

6    deliberation until Ms. Perry brings you the exhibits, but

7    that is an ideal time for you to select your foreperson.

8         Your verdict must be unanimous.  Each of you must

9    decide the case for yourself.  But you should do so only

10   after you have considered all the evidence, discussed it

11   fully with the other jurors, and listened to the view of your

12   fellow jurors.  Do not be afraid to change your opinion if

13   the discussion persuades you that you should.  But do not

14   come to a decision simply because other jurors think it is

15   right.  It is important that you attempt to reach a unanimous

16   verdict, but you must not change an honest belief about the

17   weight or effect of the evidence simply to reach a unanimous

18   verdict.

19        During your deliberations you must not communicate

20   with or provide any information to anyone by any means about

21   this case.  You may not use any electronic device or media,

22   such as a telephone, cell phone, smartphone, iPhone, or

23   computer, the Internet or any text or instant messaging

24   service, or any Internet chat room, blog, or website, such as

25   Facebook, LinkedIn, YouTube, or Twitter, to communicate with

1    anyone of any information about this case, or to conduct any

2    reasonable -- or conduct any research about this case until I

3    accept your verdict.

4          Instructions regarding use of notes.  I've noticed

5    many of you have taken notes, which is fully understandable

6    and appropriate.  When you retire to deliberate at the end of

7    the trial, you may take your notes back to the jury room with

8    you.  But, again, only for your own personal use.  Your notes

9    should not be shown or read to other jurors.  Those are for

10   your personal use.

11         Return of a verdict.  After you have reached

12   unanimous agreement on a verdict, your foreperson will fill

13   out the verdict form that has been given to you for you to

14   sign and date and advise the marshal outside the door that

15   you are ready to return.

16         Now, let me talk to you about this verdict form for

17   just a moment here.  As I mentioned to you, it is organized

18   by counts, Counts 1 through 6.  And they instruct you on what

19   you would answer as to each count.  And it instructs you once

20   you've made a decision, is that what you do next.  And you

21   will see on Count 1 is the only one where you -- on each of

22   these you start in regard to this, is the defendant guilty or

23   not guilty.  You mark whatever you decide.

24         As to Count 1, conspiracy, should you find the

25   defendant guilty of conspiracy, and that is entirely your

USCA4 Appeal: 23-4509    Doc: 12-2    Filed: 08/14/2023    Pg: 44 of 72
9:22-cr-00658-RMG    Date Filed 12/05/22    Entry Number 223    Page 43 of 71

2151

1    decision, then you will be asked was he guilty of wire fraud,

2    bank fraud, or both.  But that's the only one where you have

3    to answer, actually answer a subpart.  The rest of these,

4    each of these, say not guilty, guilty.  You mark that.  Your

5    decision, of course, must be unanimous and must be beyond a

6    reasonable doubt.

7            Communicating with the Court.  I'm now back on page

8    40 of the charge.  If it becomes necessary during your

9    deliberations to communicate with me, you may send a note

10    through the marshal signed by your foreperson or by one or

11    more members of the jury.  No member of the jury should ever

12    attempt to communicate with me except by signed writing.  And

13    I will communicate with any member of the jury or anything

14    concerning the case only in writing or orally here in court.

15    Remember that you are not to tell anyone, including me, how

16    the jury stands numerically or otherwise until after you have

17    reached a unanimous verdict or have been otherwise

18    discharged.

19            Final instructions.  I will send a copy of the

20    verdict form to the jury room.  And as I've just explained to

21    you, where you fill in the blanks here, the verdict form has

22    blanks for you to fill in not guilty or guilty for each of

23    the counts.  Follow the instructions on the verdict form.  I

24    will send a copy of these jury instructions to the jury room

25    so that you may refer to them as you fill out the verdict

 1    form.  That is, each of you will have your own -- will have

 2    your own jury charge.  And the foreperson will be in

 3    possession of the verdict form.

 4        And after you filled out the entire form, the

 5    foreperson should sign and date it, and advise the marshal

 6    outside your door that you are ready to return to the

 7    courtroom.  Again, your verdict on each count charged against

 8    the defendant must be unanimous.

 9        Now, I've got to say, the one job I hate, of the

10    most wonderful job that I have, is that I have to tell

11    alternates they are not going back to deliberate.  All of you

12    have been incredibly attentive.

13        But, Ms. Perry, can you identify the three

14    alternates to stay in the courtroom.

15        THE COURT DEPUTY:  Juror No. 28, No. 5 and No. 200.

16        THE COURT:  The three of you will go to a room.  And

17    the reason we have you there, and you are not to communicate

18    with anyone, is that should happen where one or more of the

19    jurors have to -- cannot complete deliberations, I will then

20    bring in an alternate.

21        So, Ms. Perry, can my three alternates please step

22    forward here, and then we will have a marshal take them out.

23        (Whereupon, the alternates leave the courtroom.)

24        THE COURT:  Ladies and gentlemen, I will now send

25    you to the jury room.  Select your foreperson.  And when Ms.

9:22-cr-00658-RMG    Date Filed 12/05/22    Entry Number 223    Page 45 of 71

2153

1    Perry comes in with the exhibits, you can begin your

2    deliberations.

3              (Jury leaves open court at 10:20 a.m.)

4              THE COURT:  Please be seated.  Beyond the matters we

5    previously took up in terms of objections to the charge, are

6    there any additional objections from the Government?

7              MS. LIMEHOUSE:  None from the Government, Your

8    Honor.

9              THE COURT:  From the defense?

10             MR. ABEE:  No, Your Honor.  We just stand by our

11   objections --

12             THE COURT:  Absolutely.  You are preserved.

13             Ms. Perry, if you could take the exhibits to the

14   jury room.

15             (Whereupon, the jury deliberates at 10:22 a.m.)

16             THE COURT:  Okay.  Counsel, you need to stay in the

17   courthouse in case we have questions from the jury.  I want

18   to be able to promptly respond.  Every once in a while, I

19   have had counsel, despite my instructions, wander off.  Y'all

20   stick around.  Timing is everything here.  And we will be in

21   recess until then.

22             MS. LIMEHOUSE:  Thank you, Your Honor.

23             (Whereupon, jury deliberates 10:22 a.m. to 1:12

24   p.m.)

25             THE COURT:  I have a note from the jury.  "Your

1     Honor, jury requests court transcripts of Russell Laffitte's

2     direct and cross-examination as well as the redirect."

3          Now the problem with that is, of course, there is no

4     transcript right now.  And I have observed the rough.  And as

5     hard as Karen has worked, it's not in any condition to be

6     showing to anybody.  She wouldn't want me to do it and I

7     can't do it.  Okay?  So, normally, it's not the first time

8     I've had this request.  And they think because the court

9     reporter is sitting there, you can just push a button and you

10    would have a transcript.

11         I can tell them that if there are specific portions

12    of the testimony they would like to have read to them, the

13    court reporter can do that.  We could look and search it and

14    see if we could find that.  But, you know, to do the entire

15    testimony would probably take a day, you know.  And I don't

16    think anyone wants to do that.  And, you know, we don't

17    really know if -- how concerned they are about this and

18    whether it was something they just thought they would like to

19    have or something that's very important.  But I don't think

20    it's practical for them, for my court reporter to read the

21    entire direct, cross, and redirect, but if there's something

22    in particular, we could search it.  I wouldn't do that

23    without consulting with counsel and making sure we feel like

24    that's what they requested.

25         So let's bring in the jury and let me explain this

1    to them.

2            (Whereupon, the jury returns to open court at 1:15

3    p.m.)

4            THE COURT:  Please be seated.  Ladies and gentlemen,

5    I know perfectly natural request is, hey, can we see the

6    transcript?  It's not available.  That's the practical

7    problem.  I don't know if you can tell.  I have a laptop

8    here.  And my court reporter is providing me very rough.

9    That's not a valid transcript.  The court reporter goes

10   through it, listens to it, refines it.  So we are in no

11   condition to provide you a transcript.

12           Here's the way it works if somebody wants to hear

13   testimony over again, is the court reporter reads it.

14   That's -- and I don't think y'all want me to have her read a

15   day's worth of testimony.  So here's what I suggest to you.

16   If you need it, I don't know how seriously the issue is.  To

17   just say, hey, we would like to have the transcript, that's

18   one thing.  But if there's a particular area you would like

19   the testimony, we can try to locate it, and then she can

20   publish it and read it to you.  But that's all we can do now.

21   We cannot provide you a transcript right now.

22           So why don't y'all go back.  And to the extent y'all

23   want a particular portion published, you know, we will try to

24   provide it to you.  But, you know, I regret to tell you I

25   just can't push a button and hand you a transcript.  Okay?

1   So why don't y'all return to the jury room and just let me

2   know.

3           (Jury leaves open court at 1:17 p.m.)

4           THE COURT:  Please be seated.  Any objection to what

5   the Court stated to the jury from the Government?

6           MS. LIMEHOUSE:  No objection, Your Honor.

7           THE COURT: From the defense?

8           MR. DANIEL:  There's no objection.

9           THE COURT:  Okay.  Ms. Perry, can we make this part

10  of the record.  Everyone, we are in recess and be at ease.

11  If we get something, I will summon you back.

12          (Whereupon, jury continues deliberations 1:18 p.m.

13  to 3:11 p.m.)

14          THE COURT:  I understand that the jury wants to hear

15  the Board meeting, the DVD of the Board meeting.  And, Ms.

16  Crystal, have we queued it up?

17          THE COURT DEPUTY:  I was told to wait on you.

18          THE COURT:  You were told good.

19          MS. LIMEHOUSE:  We just want to make sure the

20  transcript, just like it was presented to the jury the first

21  time, will be presented simultaneous to the recording.

22          THE COURT:  I don't have the capacity to do that.

23  Do you have the ability to do that?

24          MS. LIMEHOUSE:  Luckily, they do, yes.

25          THE COURT:  So let's queue it up, get it ready.  Are

1    we ready?  Okay.  Let's bring in the jury.

2              (Whereupon, the jury returns to open court at 3:14

3    p.m.)

4              THE COURT:  Please be seated.  I understand there

5    was a desire to listen to the DVD of the Board meeting; is

6    that correct?

7              JUROR:  Yes, sir.

8              THE COURT:  We are going to play it right now for

9    you.  Very good.

10             (Whereupon, audio is played.)

11             THE COURT:  Very good.  You can return to the jury

12   room.

13             (Jury leaves open court at 3:23 p.m.)

14             THE COURT:  Any concerns regarding -- please be

15   seated.  Any concerns from the Government regarding the

16   Court's exchange with the jury.

17             MS. LIMEHOUSE:  No concerns from the Government,

18   Your Honor.

19             THE COURT:  From the defense?

20             MR. DANIEL:  Nothing from the defense.

21             THE COURT:  We will be in recess.

22             (Whereupon, jury continues deliberations 3:24 p.m.

23   to 7:43 p.m.)

24             THE COURT:  Y'all, please be seated.  Let me

25   provide you two notes I am receiving -- I have now received

9:22-cr-00658-RMG   Date Filed 12/05/22   Entry Number 223   Page 50 of 71
USCA4 Appeal: 23-4509   Doc: 12-2   Filed: 08/14/2023   Pg: 51 of 72

2158

1   from a juror.  One of them says, "Need antibiotic at 19:21.

2   I could delay one to two hours. "

3          Second note, "Feeling pressured to change my vote."

4   Same juror.

5          MR. DANIEL:  I'm sorry?

6          THE COURT:  "Feeling pressured to change my vote."

7          I don't have any idea, no indication, as we should

8   not have, about which way that's going.  Let me tell you, my

9   instinct is that we have alternates and we should get to a

10  verdict, and that it is not practical to get her medicine and

11  drive back.  I don't like this because I'm going to bring the

12  jury back and tell them they've got to begin their

13  deliberations again.  But I don't know of any other choice I

14  have.  I welcome any thoughts anyone may have.

15         MS. LIMEHOUSE:  The Government agrees, Your Honor.

16         MR. DANIEL:  Judge, can they just come back in the

17  morning?

18         THE COURT:  Well, we don't have an issue of them not

19  deliberating.  They are deliberating.  I mean, we haven't had

20  any message from them saying that we are having -- we are

21  stuck or we need -- you know, I haven't gotten where I would

22  give an Allen charge.  I haven't gotten any of that.  I get

23  those from time to time, and I don't have that.

24         You know, you are in the same position.  I'm in a

25  position just trying to be fair.  You don't -- you know,

1    could that person be holding out for you or could convict

2    you?  I mean, you know, it's a tough choice.  And, you know,

3    it just strikes me that under this sort of situation, the

4    better course is -- that's why we have alternates.  But I

5    want to hear from you about this.

6            MR. AUSTIN:  Is that the same juror for both notes?

7            THE COURT:  Yes, both notes were from the same

8    juror.  I have no idea who it is.

9            MS. LIMEHOUSE:  Your Honor, the Government believes

10   that especially since there's been no indication from the

11   jury that they are having issues deliberating, that we would

12   like them to continue to deliberate.  Especially with the

13   impending holiday ahead of us, we would like for them to

14   continue to deliberate tonight.

15           THE COURT:  I could just tell you right now that if

16   I tell people that they have to come back tomorrow, I don't

17   think that's in anybody's interest.  Okay?  And I'm going to

18   be honest, I'm kind of trying to protect defendants here in

19   this situation.  And I don't think it's in your interest to

20   try to force people to come back tomorrow.  I don't like the

21   effect that has on pushing people to a verdict.

22           (Whereupon, a jury note is handed to the judge.)

23           THE COURT:  Let me read the third note I now

24   received, which raises an entirely different issue.  "Dear

25   Judge, we are writing this to express a shared concern."

USCA4 Appeal: 23-4509   Doc: 12-2      Filed: 08/14/2023   Pg: 53 of 72
9:22-cr-00658-RMG   Date Filed 12/05/22   Entry Number 223   Page 52 of 71

2160

1    This appears to be -- I can't quite figure out.  May

2    be all the other jurors.  "On page --"

3           (Whereupon, a jury note is handed to the judge.)

4           THE COURT:  Is there another note?

5           THE COURT DEPUTY:  Yes, sir.

6           THE COURT:  "On page 11, your final charge to us

7    states that if you let fear or prejudice or bias or sympathy

8    interfere with your thinking, there is a risk that you will

9    not arrive at a true and just verdict.  A juror's previous

10   court experience is influencing that juror's ability to

11   discuss the trial in a group setting.  That juror has made

12   comments on having been bullied as a juror on previous trials

13   and will not consider the evidence in this trial.  The juror

14   is hostile to hearing any debate from certain other jurors,

15   and the juror disagrees with your final charge and

16   specifically the definitions you've provided.  We

17   respectfully ask that you consider speaking to this issue so

18   that we are able to proceed with deliberations."

19          Now, I do not know that's the same juror.  Okay?  I

20   have no idea.  Okay?

21          Here's the next one.  "Your Honor, can you please

22   call an alternate as I am experiencing anxiety and unable to

23   clearly make my decision?"  That's a different juror.

24          MR. DANIEL:  The same one that has the medication?

25          THE COURT:  I think I've now fully disclosed all my

1    notes.  Let me just say this.  If a juror told me that she

2    was unable or he was unable -- was unwilling to consider the

3    evidence because of prior court experience, I would remove

4    that juror, whatever that is.  I have no idea how that falls.

5    I just would remove someone, because we don't allow people to

6    serve on juries that don't follow the Court's instructions.

7    I have no idea if that's the same juror as the one who has

8    written me about her medicine.  I welcome suggestions from

9    the parties.

10            MS. LIMEHOUSE:  Your Honor, we believe that you need

11   to put two alternates to replace both of those jurors.

12            THE COURT:  I mean, we've got three alternates for a

13   reason.

14            MS. LIMEHOUSE:  Also, based on where it's headed, it

15   seems there's a risk if you only replace the one who says she

16   can't follow the law, that we might be here again and have to

17   restart --

18            THE COURT:  It could end up, of course, being three

19   jurors before we know it.  And, you know, I don't want to

20   read tea leaves.  I don't know if -- I can't -- you know, we

21   shouldn't know what they're deliberating.  And they are

22   appropriately not telling me what they are doing.  And I have

23   no idea what they are doing.

24            Mr. Daniel, your suggestions?  I value your

25   experience.

USCA4 Appeal: 23-4509    Doc: 12-2    Filed: 08/14/2023    Pg: 55 of 72
9:22-cr-00658-RMG    Date Filed 12/05/22    Entry Number 223    Page 54 of 71

2162

1    MR. DANIEL:  Your Honor, just the one about the

2  hostile juror, can you just read that one last time?

3    THE COURT:  I'll be glad -- let me read them all

4  again.  How about that?  Okay.  The hostile -- it is, "Dear

5  Judge, we are writing this to express a shared concern.  On

6  page 11, your final charge to us states that if you let fear

7  or prejudice or bias or sympathy interfere with your

8  thinking, there is a risk that you will not arrive at a true

9  and just verdict.  A juror's previous court experience is

10  influencing that juror's ability to discuss the trial in a

11  group setting.  That juror has made comments about having

12  been bullied as a juror on previous trials and will not

13  consider the evidence in this trial.  The juror is hostile to

14  hearing any debate from certain other jurors, and the juror

15  disagrees with your final charge and specifically the

16  definitions you've provided.  We respectfully ask you to

17  consider speaking to this issue so that we are able to

18  proceed with deliberations."

19    MR. DANIEL:  Disagrees with your final charge?  The

20  final charge, that means the whole charge?

21    THE COURT:  I take it that "disagrees with your

22  final charge and specifically the definitions you've

23  provided."

24    MR. HOLLIDAY:  Your Honor, I think that's an easy

25  one.  That's on the jury questionnaire.  They are asked if

1    they can follow the law as they are instructed --

2            THE COURT:  This person would be struck.  You know,

3    all I can say is, whether we are talking about two jurors or

4    three jurors, I haven't any idea.  And, you know, if somebody

5    was calculating this and said, oh, I think they are going to

6    help me, and you end up keeping them on and, you know,

7    whatever, you end up convicting your person, you end up with

8    a conviction, somebody is going to feel pretty silly, and

9    vice-versa.  I mean, so the result, I don't worry about the

10    result myself.  I worry about do I have effective jurors.

11    And I've got at least a report -- I haven't confirmed it

12    yet -- that someone won't deliberate.  Okay?  That's a

13    problem.  That's a problem.

14            And my inclination would be to speak to that juror

15    and to -- I'm very hesitant to bring the juror into the

16    courtroom to do that.  I think that's a huge mistake.  And it

17    might really be best -- I mean, there's no rule book for this

18    right now, how do we do this.  It may well be that maybe the

19    best way for me to do it is for me and a court reporter and

20    my deputy, just to create a record of this, and simply ask

21    the juror in a conference room, you know, is there a problem.

22    And if there's not, I'm going to keep her deliberating.  You

23    know, if she says, oh, no, I'm talking, I mean, I am not

24    going to remove somebody.  But if there seems to be a feeling

25    among the group that this juror is not deliberating, whether

USCA4 Appeal: 23-4509    Doc: 12-2    Filed: 08/14/2023    Pg: 57 of 72
9:22-cr-00658-RMG    Date Filed 12/05/22    Entry Number 223    Page 56 of 71

2164

1    that is also the juror -- I mean, I think the one with the

2    medicine we need to send home.  She needs her medicine.  I

3    understand that.  If that happens to be the same person, that

4    happens to be the same person.

5         The person with the anxiety, that's a concern for me

6    too.  I don't want someone who is not functioning to be --

7    I've got 12 jurors for a reason.  The defendant's rights are

8    protected by having 12 functioning jurors.  And it's got to

9    be unanimous.  So I've got a problem having somebody who says

10   I can't do it anymore.  That's my concern.

11        But I want to hear from everybody before I make a

12   decision, because I think we are on virgin territory.  Mr.

13   Holliday, I've tried a hundred cases myself and then I've

14   been on the bench for 13 years, I've never had this

15   experience.

16        MR. HOLLIDAY:  That's true.  Your Honor, I think we

17   have three different situations.  I would suggest, the person

18   with the medicine, cannot risk someone's health.  So I think

19   they should be allowed to go home.  The person who cannot

20   follow the law, then they are basically -- they would be

21   struck for cause.  And I think they've indicated now that

22   they should be struck for cause.  The person --

23        THE COURT:  If true.  If true.

24        MR. HOLLIDAY:  Well, nobody --

25        THE COURT:  I don't want anybody else ganging up on

USCA4 Appeal: 23-4509    Doc: 12-2    Filed: 08/14/2023    Pg: 58 of 72
9:22-cr-00658-RMG    Date Filed 12/05/22    Entry Number 223    Page 57 of 71

2165

 1    somebody and trying to bump them off a jury.  I need to

 2    confirm that.

 3              MR. HOLLIDAY:  Right.  And then the third one, your

 4    suggestion as far as speaking -- speaking to the juror,

 5    finding out whatever, I think that's still a viable juror,

 6    the third one.

 7              THE COURT:  The anxious one?

 8              MR. HOLLIDAY:  Yes.  But I think if someone has

 9    indicated that they cannot follow the law, that's a toxic

10    juror, Your Honor.  And I don't think there's any redemption

11    from writing that.

12              THE COURT:  Well, I've got to confirm that.  I can't

13    let a juror be bumped out one way or the other who says,

14    that's not accurate, I'm fully participating, they just don't

15    agree with me.  That -- you know, that's not a juror I

16    remove.  I mean, that's a -- you know, I tell them in my

17    charge hold your convictions whatever that is.  So --

18              MR. HOLLIDAY:  What bothered me about that, Your

19    Honor, though, is the indication that there was some prior

20    experience --

21              THE COURT:  Well, that bothers me a lot.  If that

22    is, in fact, true that someone's prior experience -- you

23    know, we've heard about this, that people get in a jury room

24    and they say, I never told anyone but I was sexually abused

25    and, you know, kind of it creates -- just blows up the whole

USCA4 Appeal: 23-4509    Doc: 12-2      Filed: 08/14/2023    Pg: 59 of 72
9:22-cr-00658-RMG    Date Filed 12/05/22    Entry Number 223    Page 58 of 71

2166

1    case.  Right?  We can't have that.  But I've got to confirm

2    it.  I can't rely on someone else's account.  I will need --

3    with the consent of the parties, we are going to set up a

4    place where I will take a court reporter, and without anyone

5    present but the court reporter, I will create a record.  And

6    with my deputy and my court reporter, I will ask the juror if

7    there's a problem.

8            MS. LIMEHOUSE:  Your Honor, we would request that

9    you maybe do the same thing with the juror who's reporting

10   being anxious.  There could be a contribution.  This sort of

11   environment could be contributing to the anxiety that could

12   be alleviated depending on how you decide to handle the

13   jurors.

14           THE COURT:  Do I have the consent of the parties for

15   me creating a record to question the juror?

16           MS. LIMEHOUSE:  Yes, as long as it's on the record,

17   we have no objection, Your Honor.

18           THE COURT:  Mr. Daniel?

19           MR. DANIEL:  Yes, you do have the consent, Your

20   Honor.

21           THE COURT:  Okay.  Let me ask Ms. Perry.  Crystal,

22   where can we go?

23           MR. DANIEL:  Does the note use a pronoun, with the

24   juror that's got a strongly held conviction or just will not

25   budge because of some previous jury --

1          THE COURT:  No gender.

2          MR. DANIEL:  Is there a pronoun?

3          THE COURT:  No pronoun.

4          MR. DANIEL:  So we don't know if it's a he or she?

5          MR. HOLLIDAY:  How is that even relevant?

6          THE COURT:  Thank you.  You shouldn't know that, but

7  there is not.  I published the thing to you.  Of course, I've

8  got to figure out a way I can discern who this juror is.

9          MR. HOLLIDAY:  Your Honor, I would suggest -- we are

10  all just thinking here -- if you went into the room and you

11  would say, I have a series of notes and any juror who feels

12  the need to speak to me in private, I will be willing to

13  speak to them over here.  And just hear what they have to

14  say.  I think that would avoid singling anyone out that's in

15  that room who might feel uncomfortable talking to you.

16          THE COURT:  Well, I don't want other people around

17  when I speak to them.

18          MR. HOLLIDAY:  Right.  Right.

19          THE COURT:  That's why we are going to go down to

20  Courtroom 4.  But the question is --

21          MR. DANIEL:   Judge, we don't have any objection to

22  you just asking the foreperson which juror number that is.

23          THE COURT:  Well, I can get Ms. Perry to do that

24  without me going into that.

25          Okay.  Ms. Perry, I want you to go in and see if you

1    can get -- ask them to identify the juror number, because

2    that may solve several problems if there's an overlap there.

3            MR. DANIEL:  Judge, we've both been doing this

4    awhile --

5            THE COURT:  We litigated against each other and with

6    each other.  I tell you, this is a different experience.

7            THE COURT DEPUTY:  He didn't know the number.  I'm

8    going to get her number from the name.

9            MR. HOLLIDAY:  Your Honor, I would suggest that we

10   don't need to know any more.

11           THE COURT:  Okay.  I'm going to take action.  Fair

12   enough?  Everybody happy with that?

13           MR. HOLLIDAY:  Yes.  Thank you, Judge.

14           (Whereupon, an in-camera interview takes place with

15   the juror at 8:20 p.m. to 8:23 p.m.)

16           (8:27 p.m.)

17           THE COURT:  Let me report back to counsel.  The

18   juror regarding the medicine has been replaced and has been

19   allowed to go home.

20           I spoke with the juror expressing anxiety.  And she

21   asked to be relieved and said she wasn't able to go forward,

22   and I removed her.  I relieved her.  I granted her request

23   to -- for an alternate.  I just basically said to her, tell

24   me, can you do your duties?  And she said, I cannot do my

25   duties.  She's got medication issues herself, anxiety issues.

9:22-cr-00658-RMG    Date Filed 12/05/22    Entry Number 223    Page 61 of 71

2169

1    And I relieved her.

2         And the decisions I've made resolved the other

3    issue, so I didn't have to address it.  That was the longer

4    one.  I never had to address it.  I understood that it took

5    care from those other decisions.

6         And I'm going to bring the jurors in to tell them

7    they have to begin their deliberations again because there

8    are new jurors.

9         MR. HOLLIDAY:  Thank you, Your Honor.  We appreciate

10   your thoughtfulness.

11        MR. DANIEL:  Do you know how --

12        MR. AUSTIN:  Your Honor, I couldn't hear --

13        THE COURT:  Mr. Austin, I hope you are not

14   developing hearing problems hanging around Mr. Daniel too

15   much.  So the answer was, I relieved one juror because of

16   her -- the medication issue.  And I relieved one juror

17   because of the anxiety issue.  We have replaced both of them.

18        I need to bring the jurors in, all 12, to say they

19   need to begin their deliberations again because we have

20   brought an alternate into the room.  Okay?

21        Can we bring in the jury.

22        MR. DANIEL:  Your Honor, just for the record --

23        THE COURT:  Hold a second.

24        Yes, sir, Mr. Daniel.

25        MR. DANIEL:  Judge, we would object not to the juror

1    that was replaced for medication.  We agreed with that.  We

2    agreed with that at the time.  But the second juror that was

3    replaced about the anxiety is the one we would like to

4    take -- make an objection to.

5          THE COURT:  You can make an objection.  That one --

6    and there's a record -- she is emotionally very fragile.  She

7    could hardly speak to me.  And she explained to me she was on

8    anxiety medication and that she was not physically capable or

9    emotionally capable of going forward.  I didn't think I had

10   any choice.  We never got into what's going on in the jury

11   room or anything like that.  It was -- and she was shaking

12   when she was speaking to me.  There wasn't any confusion

13   about that one.  Okay?

14         Let's bring the jury in.

15         (Whereupon, the jury returns to open court at 8:31

16   p.m.)

17         THE COURT:  Please be seated.  Ladies and gentlemen,

18   obviously, you've had some changes in your ranks.  And the

19   requirement is that you need to begin your deliberations

20   again to bring your other two, the two jurors who have not

21   been included, into those discussions, because it needs to be

22   the decision of all 12 of you.  Obviously, the 10 of you are

23   more advanced than the other two, but you need to go back

24   into the deliberations and y'all need to walk through those

25   again.  Okay?  If you could return to the jury room.  Thank

1   you for your constant attention.

2           (Jury leaves open court at 8:32 p.m.)

3           THE COURT:  Folks, I think we followed the path

4   we've talked about following.  And we will be in recess.

5   Please be seated.  We will be in recess until the jury makes

6   a decision, if at all.

7           MR. DANIEL:  Thank you, Your Honor.

8           MS. LIMEHOUSE:  Thank you, Your Honor.

9           (Whereupon, jury deliberates 8:33 p.m. to 9:22 p.m.)

10          (Whereupon the alternate is excused.)

11          THE COURT:  Yes, sir, Mr. Austin.

12          MR. AUSTIN:  Your Honor, real quickly.  Mr. Daniel

13  had noted his objection earlier to swapping out the

14  alternate.

15          THE COURT:  I did what y'all asked me to do.

16          MR. AUSTIN:  Your Honor, I am not asking you to do

17  anything differently now.  Our understanding is that's

18  essentially, with the case law, it's akin for moving to a

19  mistrial.  And just for the sake of the record, we just

20  wanted to bring that up.  We object to replacement of one

21  juror.

22          THE COURT:  On what basis?  Because I asked you what

23  did you want me to do on these?  And we agreed I would talk

24  to the juror, who could hardly speak, she was so emotionally

25  upset.  And I asked her if she could serve.  There's a record

9:22-cr-00658-RMG    Date Filed 12/05/22    Entry Number 223    Page 64 of 71

2172

1  of this.  And she asked me to remove her, as she had written

2  me already and asked me to remove her.  So I was doing

3  exactly what we all agreed I would do.

4        I'm a little perplexed by that, Mr. Austin, to after

5  the fact coming in and start complaining about something on a

6  procedure we had agreed to already.

7        MR. DANIEL:  I thought we did object.

8        MR. AUSTIN:  I think he did take exception to that

9  on the record, Your Honor.

10       MS. LIMEHOUSE:  Your Honor, after you had already

11 done what we agreed to do --

12       THE COURT:  Correct, I had done it.  I told you this

13 is what we were going to do.

14       MR. AUSTIN:  I thought we were just going to be

15 interviewing them, not necessarily replacing them.  We are

16 not trying to -- it's a strange, fluid situation.

17       THE COURT:  You know, I try to be as transparent as

18 I could.  I read everybody everything.  I asked you what you

19 wanted me to do.  I interviewed the juror, who was plainly

20 incapable of continuing, and she was in an emotional

21 meltdown.  And I removed her.  And that's what I understood

22 y'all -- we had agreed that I would interview her and I would

23 make a decision.

24       Now you now, after the fact, want to change that.

25 You are a little -- moment late.  I already sent her home

9:22-cr-00658-RMG    Date Filed 12/05/22    Entry Number 223    Page 65 of 71

2173

1  following the procedure.

2        MR. DANIEL:  Your Honor, I think if you look at the

3  record -- we don't need to do it now, Your Honor -- but I

4  objected and took exception to it, not initially, but when

5  you came back.  We thought you were coming back to tell us

6  what the juror said or to give us what your decision would be

7  so that we could object to it and not --

8        THE COURT:  Okay.  So you are now telling me that

9  had I come back and told you that she was emotionally

10 incapable of functioning and she asked me again to remove

11 her, that you would have objected to that?

12       MR. DANIEL:  I did object to it.

13       MR. AUSTIN:  Yes, Your Honor.  I think we would

14 stated that it's a hung jury.

15       THE COURT:  It's not a hung jury.  I have

16 alternates.

17       MR. AUSTIN:  We think -- we don't see how they could

18 restart deliberations at this point this late in the game.

19       THE COURT:  Of course, they can.  That's the

20 process.  When you replace a juror, they have to restart

21 deliberations.  I brought them in here and told them to

22 restart it.

23       MR. AUSTIN:  We just want to note for the record --

24       THE COURT:  Okay.  You know, folks, to come in after

25 the fact here, after the Court laid it all out and we agreed

1    on a process, I thought it was very clear, and I did -- but

2    there's a record of her I don't think anybody would really

3    question.  It's all on the record about what she told me.

4    And I was, of course, following up on her request that she be

5    removed and told me she could explain it to me, and she did.

6    I don't want to invade her privacy.  But she is on

7    significant medication.  And she was, in my estimation, in an

8    emotional meltdown situation.  Okay?

9            Let's bring in the jury.

10           (Whereupon, the jury returns to open court at 9:26

11   p.m.)

12           THE COURT:  Please be seated.  I always have a

13   subtle hint that the guy holding the blue-back verdict form

14   is the foreman.  Am I correct in that, sir?

15           THE FOREPERSON:  Yes.

16           THE COURT:  Has the jury -- Mr. Foreman, has the

17   jury reached a unanimous verdict?

18           THE FOREPERSON:  We have, Your Honor.

19           THE COURT:  Ms. Perry, can you please retrieve the

20   verdict form.  Ms. Perry, could you please publish the

21   verdict.  It's in proper form.

22           THE COURT DEPUTY:  May it please the Court.  In the

23   case of the United States of America v. Russell Lucius

24   Laffitte, Criminal No. 922-658, we, the jury, unanimously

25   find as follows:  Count 1, in regard to the charge of

1    conspiracy to commit wire fraud and bank fraud, we find

2    defendant, Russell Laffitte, guilty.

3           As to Count 1, we find the object of the conspiracy

4    was both wire and bank fraud.

5           Count 2, in regard to the charge of bank fraud, we

6    find the defendant, Russell Lucius Laffitte, as the principal

7    aider and abettor and/or co-participant in a jointly

8    undertaken criminal activity, guilty.

9           Count 3, in regard to the charge of wire fraud, we

10   find the defendant, Russell Lucius Laffitte, as a principal

11   aider and abettor and/or co-participant in a jointly

12   undertaken criminal activity, guilty.

13          Count 4, in regard to the charge of misapplication

14   of bank funds relating to the distribution of $680,000 in

15   bank funds to the Peters Murdaugh Parker Eltzroth & Detrick,

16   PA Law Firm, we find the defendant, Russell Lucius Laffitte,

17   as the principal aider and abettor and/or co-participant in a

18   jointly undertaken criminal activity, guilty.

19          Count 5, in regard to the charge of misapplication

20   of bank funds relating to funding a $750,000 bank loan to

21   Alex Murdaugh, we find the defendant, Russell Lucius

22   Laffitte, as a principal aider and abettor and/or

23   co-participant in a jointly undertaken criminal activity,

24   guilty.

25          Count 6, in regard to the charge of misapplication

9:22-cr-00658-RMG    Date Filed 12/05/22    Entry Number 223    Page 68 of 71

2176

1   of bank funds relating to funding of a $500,000 line of

2   credit to Alex Murdaugh, we find the defendant, Russell

3   Lucius Laffitte, as the principal aider and abettor and/or

4   co-participant in a jointly undertaken criminal activity,

5   guilty.  Signed by the foreperson on November the 28th,

6   2000 -- November 22nd, 2022.

7           THE COURT:  Ms. Perry, could you please poll the

8   jury.

9           THE COURT DEPUTY:  Ladies and gentlemen, when your

10  number is called, please indicate if this is your true and

11  correct verdict.  Juror No. 28?

12          JUROR:  Yes.

13          THE COURT DEPUTY:  No. 9?

14          JUROR:  Yes.

15          THE COURT DEPUTY:  No. 5?

16          JUROR:  Yes.

17          THE COURT DEPUTY:  No. 55?

18          JUROR:  Yes.

19          THE COURT DEPUTY:  No. 17?

20          JUROR:  Yes.

21          THE COURT DEPUTY:  No. 205?

22          JUROR:  Yes.

23          THE COURT DEPUTY:  No. 111?

24          JUROR:  Yes.

25          THE COURT DEPUTY:  No. 25?

USCA4 Appeal: 23-4509    Doc: 12-2    Filed: 08/14/2023    Pg: 70 of 72
9:22-cr-00658-RMG    Date Filed 12/05/22    Entry Number 223    Page 69 of 71

2177

1          JUROR:  Yes.

2          THE COURT DEPUTY:  No. 6?

3          JUROR:  Yes.

4          THE COURT DEPUTY:  No. 189?

5          JUROR:  Yes.

6          THE COURT DEPUTY:  173?

7          JUROR:  Yes.

8          THE COURT DEPUTY:  And 60?

9          JUROR:  Yes.

10          THE COURT:  All the jurors have indicated affirmness

11   that this is their true and proper verdict.  Please roll the

12   verdict, roll the judgment.  I'm now going to ask the jury to

13   return to the jury room.  I'm going to come back in the jury

14   room to just thank you for your service in just a moment.

15   Okay.

16          (Jury leaves open court at 9:32 p.m.)

17          THE COURT:  Please be seated.  Does the Government

18   object to the continuation of bond for the defendant?

19          MS. LIMEHOUSE:  No objection from the Government,

20   Your Honor.

21          THE COURT:  Mr. Laffitte, you obviously are now

22   convicted in federal court and you must abide by bond.  And I

23   think it's appropriate to continue the bond, because you have

24   been fully compliant throughout the time you have been on

25   bond.

1          I want to set a deadline of 14 days for any

2     post-trial motions under Rule 29(c)(1).  Are there further

3     matters to come before the Court at this point, from the

4     Government?

5          MS. LIMEHOUSE:  Nothing from the Government, Your

6     Honor.

7          THE COURT:  From the defense?

8          MR. DANIEL:  Nothing from the defense, Your Honor.

9          THE COURT:  Very good.  We stand adjourned.

10          (Whereupon, the proceedings are adjourned.)

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

9:22-cr-00658-RMG   Date Filed 12/05/22   Entry Number 223   Page 71 of 71
USCA4 Appeal: 23-4509   Doc: 12-2   Filed: 08/14/2023   Pg: 72 of 72

2179

1                    CERTIFICATE OF REPORTER

2

3          I, Karen V. Andersen, Registered Merit Reporter,

4    Certified Realtime Reporter for the State of South Carolina

5    at Large, do hereby certify that the foregoing transcript is

6    a true, accurate and complete Transcript of Record of the

7    proceedings.

8          I further certify that I am neither related to nor

9    counsel for any party to the cause pending or interested in

10   the events thereof.

11

12

13

14

15   Karen V. Andersen
     Registered Merit Reporter
16   Certified Realtime Reporter

17

18

19

20

21

22

23

24

25