Docket No. 23-4509

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

United States of America ................................................................Plaintiff-Appellee,

v.

Russell Lucius Laffitte ...............................................................Defendant-Appellant.

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA,
BEAUFORT DIVISION, RICHARD M. GERGEL, DISTRICT JUDGE

_____

## DEFENDANT-APPELLANT'S REPLY TO GOVERNMENT'S RESPONSE
## TO MOTION FOR RELEASE PENDING APPEAL

_____

William W. Wilkins
MAYNARD NEXSEN PC
104 S. Main Street, Suite 900
Greenville, SC 29603-0648
Phone: 864.370.2211
Fax: 864.282.1177
Email: bwilkins@maynardnexsen.com

Mark C. Moore
Michael A. Parente
MAYNARD NEXSEN PC
1230 Main Street, Suite 700
Columbia, SC 29201
Phone: 803.771.8900
Fax: 803.253.8277
Email: mmoore@maynardnexsen.com
Email: mparente@maynardnexsen.com

John C. Neiman, Jr.
MAYNARD NEXSEN PC
1901 Sixth Avenue North, Suite 1700
Birmingham, AL 35203
Phone: 205.254.1000
Fax: 205.254.1999
Email: jneiman@maynardnexsen.com

*Counsel for Defendant-Appellant*
*Russell Lucius Laffitte*

# TABLE OF CONTENTS

INTRODUCTION ....................................................................................2

LEGAL STANDARD AND STANDARD OF REVIEW .......................................4

ARGUMENTS................................................................................................7

A.  At least portions of the juror affidavits are admissible as they do not concern the validity of a verdict. ..........................................................................7

B.  The removal of either of the two jurors presents a substantial question likely to result in a new trial...............................................................................13

C.  Neither Laffitte nor his trial counsel knowingly consented to the removal of either juror and neither claim is waived.................................................18

    1. Laffitte did not consent to the removal of Juror 88 at any point and Juror 88's improper removal, standing alone, requires reversal......................................20

    2. Laffitte did not agree to the dismissal of Juror 93 prior to her removal— and did not knowingly consent to her removal at all.............................................23

CONCLUSION ................................................................................29

Appellant Russell Lucius Laffitte ("Laffitte") hereby replies to the Government's Response ("Response") in Opposition to his Motion for Release Pending Appeal ("Motion").

## INTRODUCTION

The fact that Laffitte's trial counsel consented to the district court ("the court" or "the district court") "creating a record to question" a juror in camera following the court's rejection of counsel's late-evening,[1] appropriate request to suspend jury deliberations until the next day, does **not** mean Laffitte consented to the court removing and replacing any jurors outside his presence. Dkt. 223 at 58.

Also, ███████████████████████████████████████████████

███████████████████████████ advised the parties that it "read everybody everything" about the jurors' notes, and then, without consent from Laffitte, *sua sponte* dismissed two jurors outside Laffitte's presence. *Id.* at 64. The court, thus, deprived Laffitte of his ability to timely object, much less knowingly consent to any act with respect to the removal of these two jurors. The court's improper removal of either Juror 88 or Juror 93, standing alone, warrants reversal, and, therefore, the improper removal of both should require release pending appeal.

---

[1] It must be noted that this request was made shortly after 7:45 p.m. on the evening of November 22, 2022 after the district court advised of its receipt of two notes from a juror ████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████

2



In contesting this Motion, the Government, in its oversized Response, relies heavily on

█████████████████████████████████████████████████████

█████████████████████████████████████████████████████

████ [2] Moreover, the Government fails to acknowledge its own failures to protect

Laffitte's rights during the juror removal process, takes inappropriate leaps with the

record, misconstrues circuit precedent, and incorrectly states the standard of review.

Rather than appropriately deal with the issues in the jury room detailed by

several of the jury notes, the court did what it said it would not do ("let a juror be

---

[2] ███████████████████████████████████████████████████

██████████████████████████████████ Laffitte intended
to use those notes in his planned written filing in the district court in support of his
request for bond pending appeal—and counsel had discussed an expedited briefing
schedule on this motion with the Government prior to sentencing, with counsel
intending to file a written motion with the district court within a few days of
sentencing. The district court, however, denied Laffitte's request to file a written
Motion for Release Pending Appeal. *See* Dkt. 323 at 199-201.

bumped out") and removed two jurors ████████████████████████████

████████████████████████████████████████ Dkt. 223 at 57.

Given the totality of the circumstances warranting reversal, there are substantial

enough questions that Laffitte should be released pending appeal.

## LEGAL STANDARD AND STANDARD OF REVIEW

The Government concedes the Motion is not made for the purpose of delay

and that Laffitte is not a flight risk or a danger to the community. Therefore, there is

no question of fact and the sole remaining focus is the legal standard in 18 U.S.C.

§3143(b)(2) – whether the appeal raises "a substantial question of law or fact likely

to result in reversal or an order for a new trial." This Court has long followed a two-

step inquiry in applying §3143(b)(2): first, "whether the question presented on

appeal is a substantial one, and second if decided in favor of the accused, whether

the substantial question is important enough to warrant reversal or a new trial on all

counts for which the district court imprisoned the defendant." *United States

v. Steinhorn*, 927 F.2d 195, 196 (4th Cir. 1991) (per curiam) (cleaned up).

This Court has defined a "substantial question" as "a 'close' question or one

that very well could be decided the other way." *Id.* (quoting *United States v.

Giancola*, 754 F.2d 898 (11th Cir. 1985)). The standard does not require

"a likelihood of success on appeal"; rather the question simply must be "fairly

debatable."[3] *United States v. Garcia*, 340 F.3d 1013, 1021 n.5 (9th Cir. 2003). Therefore, this Court's role is "not to pre-judge the merits of…the identified questions, nor…of still others that may be raised in due course," but instead "merely to assess the apparent 'closeness' of the identified questions as that appears on the necessarily truncated motion record." *United States v. Bakker*, 891 F.2d 287 at *3 (4th Cir. 1989) (unpublished).

Contrary to the Government's suggestion, this Court does not simply review the district court's summary denial of Laffitte's request for release pending appeal for "clear error."[4] *See Garcia*, 340 F.3d at 1015 (applying *de novo* review to district court's legal determination in denying release under 18 U.S.C. §3143). Instead, because this is ultimately a legal question of whether the Motion raises a substantial question likely to result in a new trial, this Court must review the limited record to make its own *de novo* determination about the closeness of the question. *See United States v. Eaken*, 995 F.2d 740, 741 (7th Cir. 1993) ("We review *de novo* orders

---

[3] There is no question this issue is "fairly debatable" as the parties have briefed the issues extensively with both the district court and this Court, citing case law on both sides of the issues with no direct binding precedent on point.

[4] In support of its position, the Government cites to *United States v. Langford*, 687 F. App'x 265 (4th Cir. 2017) (unpublished), a non-precedential opinion that is inapplicable here. In *Langford*, the defendant moved for release pending sentencing, not appeal, and the Court decided a factual issue, not a legal issue – that the defendant was a flight risk because the defendant could not overcome the presumption that "by clear and convincing evidence," the defendant was "not likely to flee." *Id.* (citing 18 U.S.C. § 3143(a)).

5

releasing a defendant pending appeal—that is, our review of release orders under 18 U.S.C. § 3143(b) is independent." (cleaned up)); *see also United States v. Brown,* 368 F.3d 992, 993 (8th Cir. 2004) ("we review *de novo* [the] ultimate legal question whether detention is required") (cleaned up). This Court must examine the transcript, juror notes, and juror affidavits to assess the closeness of the questions presented – and to make its own determinations about the admissibility of portions of those affidavits. *See United States v. O'Keefe,* 169 F.3d 281 (5th Cir. 1999) ("…independently reviewing relevant portions of the record of the trial and post-trial proceedings…").

Determining the closeness of these questions, or deciding that these issues "very well could be decided" one way or the other is a low threshold comparable to a preponderance of the evidence standard. *Steinhorn,* 927 F.2d at 196. As has been briefed in the Motion and expanded on herein, the violations of Laffitte's constitutional rights are at least close questions ████████████████████████ ████████████████████████████████████████ The district court's improper removal of the jurors creates questions that are "important enough to warrant…a new trial," and, therefore, release pending appeal. 18 U.S.C. §3143(b)(2).

# ARGUMENTS

**A. At least portions of the juror affidavits are admissible as they do not concern the validity of a verdict.**

FRE 606(b) is not a blanket prohibition on juror affidavits, as the Government seems to suggest. *See McDonald v. Pless*, 238 U.S. 264, 268-69 (1915) ("it would not be safe to lay down any inflexible rule because there might be instances in which such testimony of the juror could not be excluded without violating the plainest principles of justice"); *United States v. Villar*, 586 F.3d 76, 87 (1st Cir. 2009) ("we believe that the rule against juror impeachment cannot be applied so inflexibly as to bar juror testimony" in certain cases that "implicate a defendant's right to due process and an impartial jury."). Indeed, the Rule itself only applies "[d]uring an inquiry into the validity of a verdict." FRE 606(b)(1). These affidavits are not being offered to show "the effect of anything on that juror's vote" or a juror's "mental processes concerning the verdict." *Id.*

7

*See* Dkt. 261 at 6-

7. The Government provides no support, other than the district court's order, for the

proposition that these affidavits implicate an inquiry into the validity of a verdict.

Moreover, even if it were an inquiry into the validity of the verdict, FRE 606

contains two applicable exceptions regarding "extraneous prejudicial information"

and "outside influence(s)" brought to bear on the jury. FRE 606(b)(2)(A)-(B).

This Court has previously held that "an

'outside influence' refers to a factor originating outside of normal courtroom

proceedings which influences jury deliberations, such as a statement made by a

8

bailiff to the jury or a threat against a juror." *United States v. Johnson*, 187 F.3d 632 at *13 (4th Cir. 1999) (unpublished) (citing *United States v. Jones,* 132 F.3d 232, 245 (5th Cir. 1998) (same); and *United States v. Bassler,* 651 F.2d 600, 602 (8th Cir. 1981) ("Extrinsic or extraneous influences include publicity received and discussed in the jury room, matters considered by the jury but not admitted into evidence, and communications or other contact between jurors and outside persons.")). Other circuits have agreed that "extraneous influence has been construed to cover…communications or other contact between jurors and third persons, including contacts with the trial judge outside the presence of the defendant and his counsel." *Gov't of Virgin Islands v. Gereau*, 523 F.2d 140, 149 (3d Cir. 1975) (cleaned up).

The Government argues ███████████████████████████████████████
███████████████████ *See* Response at 31 (citing *United States v. Acker*, 52 F.3d 509, 516 (4th Cir. 1995)). In *Acker*, a juror was "limping badly" and was ultimately excused to seek medical attention. *Id.* at 515. ████████████████████████
█████████████████████████████████████████ This Court affirmed the district court's failure to consider the juror's affidavit given that that there was "no showing of 'extraneous prejudicial information' or 'outside influence' being brought to bear on…any juror." *Id.* at 516. ██████████████████████
███████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

██████████████████████████████████████

Similarly, in *United States v. Gravely,* 840 F.2d 1156 (4th Cir. 1988), this Court upheld a district court's denial of a defendant's request to interview jurors to determine if the pressure or lack of adequate time for deliberation was **self-imposed** and not an external influence. ███████████████████████████████

███████████████████████████████████

Moreover, the Supreme Court has recently allowed the admissibility of juror testimony in circumstances that "cast serious doubt on the fairness and impartiality of the jury's deliberations," including neglecting to disclose bias during *voir dire*.[5] *Peña-Rodriguez v. Colorado*, 580 U.S. 206, 217 (2017); *see also Warger v. Shauers*, 574 U.S. 40, 51 n.3 (2014) ("there may be cases of juror bias so extreme that, almost by definition, the jury trial right has been abridged."). In addition, several states have also codified additional exceptions to FRE 606(b) in situations including threats of

---

[5] Prior to *Peña-Rodriguez*, courts had declined to consistently recognize any exceptions (other than those in FRE 606(b)) to the no-impeachment rule, including instances of racial comments, *see United States v. Benally*, 546 F.3d 1230, 1236–38 (10th Cir. 2008) and intoxication, *see Tanner v. United States*, 483 U.S. 107, 122, (1987). Those cases do not survive the Supreme Court's decision in *Peña-Rodriguez* and so the exclusions set forth in FRE 606(b) are no longer exhaustive.

violence or violent acts, reaching a verdict by a game of chance, or serving on a jury under the influence of alcohol or drugs. *See, e.g.,* Minn. Rule Evid. 606(b) ("a juror may testify…as to any threats of violence or violent acts brought to bear on jurors, from whatever source"). ██████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

██████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████ *See*

*Barnes v. Joyner,* 751 F.3d 229, 242 (4th Cir. 2014) (discussing a "defendant's entitlement to an evidentiary hearing, when the defendant presents a credible allegation of communications or contact between a third party and a juror concerning

---

6 ████████████████████████████████████████
████████████████████████████████████████████
████████████ kt. 257-258 ████████████████████
████████████████████████████████████████████

the matter pending before the jury."). █████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

████████ Dkt. 269 at 15.

███████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

████████████████████████████████ *Kourouma v. Holder*, 588 F.3d 234, 242

(4th Cir. 2009). ██████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████

███████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

████████████████████ and their consideration in light of the other evidence here

mandates reversal and release pending appeal.

## B. The removal of either of the two jurors presents a substantial question likely to result in a new trial.

The removal of **either** of the two jurors presents a question that is at least a

close call meriting release pending appeal, but taken together, the removal of both is

more than substantial enough to warrant a new trial.[7] The district court improperly

removed these two jurors **outside** the presence of the parties without accurately and

fully explaining to Laffitte and his counsel its intention to do so. A close review of

the record demonstrates that Laffitte did not consent to the removal of Juror 88—

and as to Juror 93, the record does **not** show that counsel consented to her removal

**prior** to her replacement, and, any alleged "consent" was not knowingly given

because ███████████████████████████████████████████

---

[7] While the Court will generally "review a district court's determination whether to remove a juror for cause for an abuse of discretion," *United States v. Abdulla*, 632 F. App'x 98, 100 (4th Cir. 2015), the appellate court must perform a more exacting review ████████████████████████████

██████████████ *United States v. Hernandez*, 862 F.2d 17, 23 (2d Cir. 1988); *see also United States v. Thomas*, 116 F.3d 606, 624-25 (2d Cir. 1997)████████████████████████████

███████████████████████████████████████████

████████████

Indeed, when faced with the sole issue of whether a question was substantial, this Court has granted release pending appeal finding that such close questions existed. *See* Order Granting Release Pending Appeal, *United States v. McDonnell*, No. 15-4019 (4th Cir. Jan. 26, 2015); Order Granting Release Pending Appeal, *United States. v. Ravenell*, No. 22-4369 (4th Cir. July 6, 2023); *see also United States v. Ravenell*, 47 F.4th 882, 883 (4th Cir. 2022) (Wynn, J., dissenting) (pointing "to an extraordinarily close question."). The questions presented by Laffitte are similarly "extraordinarily close" and are likely to result in a new trial because the court's in camera removal of the two jurors violated Laffitte's due process rights, his right to a fair and impartial jury trial, and his right to be present during proceedings. *See* Dkt. 224, 254, 261.

These constitutional violations are not harmless error. *See United States v. Lawson*, 677 F.3d 629, 648-49 (4th Cir. 2012) ("[I]f even a single juror's impartiality is overcome," the defendant's right to an impartial jury has been compromised.). While it is not necessary for this Court to pre-judge the merits of the appeal, it is clear from a cursory review of the record that the removal of either of the two jurors presents a substantial question ████████████████████████

███████████████████████████████████████████

14

███████████ *See* Dkt 257 at ¶¶ 6, 9; 258 at ¶¶ 5, 6, 19. The district court ██████

████████████████████████████████ replaced them with alternates, and the

reconstituted jury arrived at a guilty verdict on all counts some 40 minutes later. This

"swift verdict" following the replacement of these two jurors "strongly suggests that

the trial judge's [action] may have induced unanimity" ████████████████████

██████████████████████████████████████████ *Rogers v. United*

*States*, 422 U.S. 35, 40 (1975).

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████ *United States v. Thomas*, 116 F.3d 606, 624 (2d Cir.

1997). ██████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

██████ *Hernandez*, 862 F.2d at 23 (2d Cir. 1988) (cleaned up). █████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

15

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

████████████████████████ *see also United States v. Litwin,* 972 F.3d 1155,

1174 (9th Cir. 2020)█████████████████████████

███████████████████████████████████████████

█████████████ *United States v. Brown*, 823 F.2d 591, 592 (D.C. Cir. 1987)████

███████████████████████████████████████████

████████████████████████████████████

Moreover, the defendant's right to be present under Rule 43(a) has been extended to require "that messages from a deliberating jury, pertaining to ongoing deliberations, ought to be **fully** disclosed to counsel and that counsel should be accorded an opportunity to be heard before the trial judge addresses the jurors." *United States v. Maraj*, 947 F.2d 520, 525–26 (1st Cir. 1991) (emphasis added); *see also Rogers v. United States,* 422 U.S. 35, 39 (1975); *United States v. Mejia*, 356 F.3d 470, 475 (2d Cir. 2004) ("the note should be marked as the court's exhibit and read into the record with counsel and defendant present"); *United States v. Ronder*, 639 F.2d 931, 934 (2d Cir. 1981); *United States v. Robinson*, 560 F.2d 507, 516 (2d

Cir. 1977) (en banc); *United States v. Akitoye*, 923 F.2d 221, 226 (1st Cir. 1991) (commending trial court's handling of jury note and commenting that court "was punctilious in consulting with counsel" at each juncture). ███████████████████

████████████████████████████████████████████████████████

███████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

█████████████████████████████████████████████████[8] For example, when a juror is removed by preemptory challenges under Rule 24(b), both sides know not only the identity of a challenged juror, but also have access to a detailed questionnaire with additional information about the juror. *See United States v. Barnette,* 644 F.3d 192 (4th Cir. 2011).

Had Laffitte and his trial counsel known ████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

███████████████████████████████████████████ the court's apparent

_____

[8] Laffitte's counsel attempted to determine the gender of the juror who authored the first two notes. *See* Dkt. 223 at 58-59. In response, the court stated: You shouldn't know that, but there is not. I published the thing to you." *Id.* at 59. Of course, as it turns out, the court did not accurately publish the note nor did it identify the juror.

intention to remove both jurors *sua sponte* and outside the presence of the parties,

Laffitte's trial counsel would have strenuously objected to the district court's

proposal that it be allowed to question a juror in camera – just as they would have

objected to the removal of Juror 93 or any other juror without a searching interview

of said juror in the presence of themselves and Laffitte. ██████████████

███████████████████████████████████████████

██████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

████████████████████████

## C. Neither Laffitte nor his trial counsel knowingly consented to the removal of either juror and neither claim is waived.

The Government argues that Laffitte's claims are waived because his trial

counsel "consented to the procedure the district court used to replace Juror 88 and

has repeatedly acknowledged he consented to the removal of Juror 93." *Response* at

31.[9] To support this, the Government mainly cites to the district court's denial of a

motion for new trial and the transcript where Laffitte's counsel consented to the court

"creating a record to question" the allegedly "non-deliberating" juror, and a post-

---

[9] In fact, these claims are not waived for appeal ████████████████████
████████████████████████████████████████. Dkt. 269
at 1.

removal statement by counsel (made only after the district court announced that it had replaced two jurors) that counsel had not objected "to the juror that was replaced for medication" – Juror 93. Dkt. 223 at 58; 61-62. However, the record demonstrates that (1) Laffitte did not consent to the removal of any juror before the judge departed the courtroom to question the allegedly "non-deliberating" juror; (2) Laffitte's trial counsel incorrectly stated that he previously "agreed" with the removal of Juror 93; (3) the court failed to explain to Laffitte that to "take action" meant to potentially dismiss jurors outside his presence, including Juror 93 whom the court never questioned; ████████████████████████████████████████████████ ██████████████████████████ voiding any arguable consent to its, at best, confusing process for removing jurors.

A waiver of appellate issues must "meet the standard of being knowing and intelligent." *Narine v. Holder*, 559 F.3d 246, 247 (4th Cir. 2009). For example, in the context of appeal waivers in plea agreements, this Court has ruled that an "appeal waiver is not knowingly or voluntarily made if the district court fails to specifically question the defendant concerning the waiver provision of the plea agreement during the Rule 11 colloquy and the record indicates that the defendant did not otherwise understand the full significance of the waiver." *United States v. Johnson*, 410 F.3d 137, 151 (4th Cir. 2005). Similarly, in order for a defendant to plead guilty, a court

19

must make a clear record that a defendant knowingly and intelligently waives their right to a trial by jury. *See Adams v. U.S. ex rel. McCann,* 317 U.S. 269, 275, (1942).

As will be discussed with respect to each juror, neither Laffitte nor his counsel knowingly and intelligently consented to the removal of either juror before they were dismissed by the district court. Indeed, Laffitte himself was not addressed by the court **at all** during this process. While the district court addressed Laffitte directly regarding witness sequestration (Dkt. 204 at 225), and, at his sentencing, regarding his rejection of post-trial offers per *Missouri v. Frye*, 566 U.S. 134 (2012) (Dkt. 323 at 6), the district court failed to address Laffitte when discussing potential juror removals. Therefore, with respect to the most important issue at trial – whether two jurors whom he and his counsel had accepted during jury selection and observed during two weeks of trial would remain on the jury that decided his fate—the court failed to address him ████████████████████████████ ██████ to allow him and his counsel to make reasoned and informed decisions. Therefore, neither Laffitte nor his counsel could have knowingly and intelligently waived a challenge to either juror.

### 1. Laffitte did not consent to the removal of Juror 88 at any point and Juror 88's improper removal, standing alone, requires reversal.

While it is true that Laffitte's counsel consented **to the questioning** of a single juror and creating a record of that questioning, glaringly absent from the record is any indicia that Laffitte or his counsel consented **to the removal** of Juror 88 or even

acknowledged that the court might remove a juror after a private questioning session.
Further, it appears that counsel consented to the questioning of the allegedly "non-
deliberating juror," ███████████████████████████████████████████
and there appears to be much confusion as to which juror or jurors the court actually
intended to question. The court explained that it had "no idea" whether the "non-
deliberating" juror was the same juror who sent the first two notes and stated that
the group note may even be from "all the other jurors." Dkt. 223 at 52. Then, the
note from Juror 88 came and the court stated this was a "different juror." *Id.* When
the government recommended the replacement of both the "non-deliberating" juror
and the juror needing medication – but said nothing about the anxious juror – the
court announced its "inclination" to "speak to" the "non-deliberating" juror. *Id.* at
55. The court then reiterated its intent to "confirm" reports of a non-deliberating
juror. *Id.* at 57.

After receiving the note from Juror 88, ████████████████████████
████████████████████████████████████████████████████████████
██████████████████ Dkt. 205 at 5. The court then said, "with the consent of the
parties…**I will create a record**. And **with my deputy** and my court reporter, **I will
ask the juror if there's a problem**." Dkt. 223 at 58 (emphasis added). The court
asked, "Do I have consent of the parties **for me creating a record to question the
juror**?" *Id.* (emphasis added). Because it was abundantly clear to the parties that the

court sought **only to question** a single juror – not potentially remove the juror – Laffitte's counsel replied, "Yes, you do have…consent, Your Honor." *Id.* This is confirmed by the Government's own statement that "**as long as it's on the record**, we have no objection." *Id.* (emphasis added). Before leaving to conduct the in camera interview, the court stated, "I'm going to take action," without ever mentioning that the "action" might include removal of two jurors: ████████

████████████████████████████████████████

████████████. *Id.* at 60.

Immediately upon returning to the courtroom, the court stated, "Let me report back to counsel…I spoke with the juror expressing anxiety…and I removed her. I relieved her." *Id.* at 60-61. After the court announced this removal, Laffitte's counsel objected on the record stating, "the second juror that was replaced about the anxiety is the one we would like to…make an objection to." *Id.* at 62. In addition, Laffitte's counsel persisted with the court stating that "we object to the replacement" of Juror 88 and "it's akin [to] moving [for] a mistrial." *Id.* at 63. Laffitte's counsel explained that, when they consented to the process, he thought the court was "**just going to be interviewing them, not necessarily replacing them**." *Id.* at 64. (emphasis added). Laffitte's counsel reminded the court that they "objected and took exception to it, not initially, but when you came back. **We thought you were coming**

22

**back to tell us what the juror said or to give us what your decision would be so that we could object to it**." *Id.* at 65.

There was clearly no consent given to remove Juror 88, only to question that juror and create a record of that. It appears, by the Government's own statements at the time, that the Government was under the same impression. Now, the Government tries to expand this to argue that Laffitte's counsel consented to the process that led to the removal of Juror 88. However, there is no support for this in the record and instead, the record clearly shows that Laffitte's counsel was consenting to the creation of a record and understood that to be the only "action" the court was taking. At no point did Laffitte or his counsel consent to the removal of Juror 88 – ██████

████████████████████████████████████████████████

████████████████████████, the district court's own lack of clarity concerning its intentions, and its failure to address Laffitte at all. The removal of Juror 88 alone constitutes reversible error and entitles Laffitte to release pending appeal.

**2.  Laffitte did not agree to the dismissal of Juror 93 prior to her removal—and did not knowingly consent to her removal at all.**

The Government argues at length that the statements made by Laffitte's trial counsel **after** Juror 93 was dismissed equates to consent to her removal and waiver of the issue. However, his statement made post-removal was simply inaccurate ██

████████████████████████████████

Once the court reported that it had removed Juror 93, Laffitte's counsel stated, "we would object not to the juror that was replaced for medication. We agreed to that. We agreed to that at the time." Dkt. 223 at 61-62. However, there is **nothing** in the record before the removal of Juror 93 to indicate that Laffitte's counsel had in fact agreed to her removal. Laffitte's counsel made a factually incorrect statement that neither the court nor the Government corrected despite knowing that no such prior agreement had been reached. As discussed above, the only consent, agreement, or understanding regarding the removal of any juror, including Juror 93, dealt only with the in camera interview of Juror 88.



Dkt. 205 at 2-3.

---

[10] (Dkt. 205 at 4)

kt. 258 at ¶16.



(Dkt. 258)



██████████████████████████████████████████ *See Johnson*, 187 F.3d 632 at *13

██████████████████████████████████████ *Gov't of Virgin Islands*, 523

F.2d at 149 n.25 (collecting similar cases).

████████████████████████████████████████████████████████

████████████████ Dkt. 258 at ¶9 ████████████████████████████

████████████ Dkt. 205 at 2. ██████████████████████████████

████████████████████████████████████████████████████████

███████ Dkt. 258 at ¶9. ████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████ *See* Dkt. 223 at 49. ████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████ Dkt. 258 at ¶11. ████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████



*See* Dkt. 258 at ¶¶11-12.

---

11 

Dkt. 258 at ¶12.

Instead, the court told the parties, "it is not practical to get her medicine **and drive back**." Dkt. 223 at 50 (emphasis added). The court then moved on to the topics of the second and third notes, but later added, "I think the one with the medicine we need to send home. She needs her medicine" knowing that this was also the juror that was being pressured to change her vote. *Id.* at 56. The court's next mention of Juror 93 is when it announced that "[t]he juror regarding the medicine has been replaced and has been allowed to go home." *Id.* at 60. The court then told the parties, "I try to be as transparent as I could. **I read everybody everything**." *Id.* at 64.



See Dkt. 262, 263, 269.

---

[12] While Laffitte's trial counsel apparently mistakenly thought that they had consented to the removal of Juror 93, *see* Dkt 224 at 9, a close review of the record indicates they did not and to the extent that was not corrected in prior briefing, Laffitte expressly retracts any such concession previously made on his behalf.



Her removal likewise merits reversal of the verdict and release pending appeal.

## CONCLUSION

This Court should grant Laffitte's Motion for Release Pending Appeal because the removal of either juror was reversible error and Laffitte has presented substantial questions that are likely to warrant a new trial.

29

Dated: August 29, 2023          Respectfully submitted,

*/s/ William W. Wilkins*

William W. Wilkins
MAYNARD NEXSEN PC
104 S. Main Street, Suite 900
Greenville, SC 29603-0648
Phone: 864.370.2211
Fax: 864.282.1177
Email: bwilkins@maynardnexsen.com

Mark C. Moore
Michael A. Parente
MAYNARD NEXSEN PC
1230 Main Street, Suite 700
Columbia, SC 29201
Phone: 803.771.8900
Fax: 803.253.8277
Email: mmoore@maynardnexsen.com
Email: mparente@maynardnexsen.com

John C. Neiman, Jr.
MAYNARD NEXSEN PC
1901 Sixth Avenue North, Suite 1700
Birmingham, AL 35203
Phone: 205.254.1000
Fax: 205.254.1999
Email: jneiman@maynardnexsen.com

*Counsel for Defendant-Appellant*
*Russell Lucius Laffitte*

30

# <u>CERTIFICATE OF COMPLIANCE</u>

As required by Rule 32(g)(1) of the Federal Rules of Appellate Procedure, I hereby certify that this filing is in compliance with the type form and volume requirements. This Motion was prepared using Microsoft Word 2016. It is proportionately spaced; uses a Roman-style, serif typeface (Times New Roman) of 14-point; and contains 6,436 words exclusive of the material not counted under Rule 32(f) of the Federal Rules of Appellate Procedure.

Dated: August 29, 2023          */s/ William W. Wilkins*
                                William W. Wilkins
                                Maynard Nexsen PC

                                *Counsel for Defendant-Appellant*
                                *Russell Lucius Laffitte*

## CERTIFICATE OF SERVICE

I certify that on August 29, 2023, the foregoing filing was served on counsel of record for all parties through the CM/ECF system.

Dated: August 29, 2023          */s/ William W. Wilkins*
                               William W. Wilkins

                               *Counsel for Defendant-Appellant*
                               *Russell Lucius Laffitte*