No. 23-4509

IN THE UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

UNITED STATES OF AMERICA ........................................... *Plaintiff-Appellee*,

*Versus*

RUSSELL LUCIUS LAFFITTE .........................................*Defendant-Appellant.*

APPELLEE'S RESPONSE TO MOTION FOR RELEASE PENDING
APPEAL

## INTRODUCTION

Appellant Russell Lucius Laffitte has not shown his appeal raises a substantial question of law or fact likely to result in reversal or a new trial. Laffitte's claims were squarely—and correctly—rejected by the district court. He waived his arguments by consenting to the procedures the district court used to relieve the two jurors in question, and the district court acted well within its broad discretion in replacing both of them: one needed medication, and one was in an "emotional meltdown situation." Laffitte's claims to the contrary ignore the applicable standards of review, and they rely on facts not found by the district court, assertions that directly contradict the district court's findings, ▆▆▆▆▆▆▆

1

████████████████████████████ Laffitte's motion

for release pending appeal should be denied.

## STATEMENT OF THE CASE

Laffitte pleaded not guilty to a Second Superseding Indictment charging conspiracy to commit wire fraud and bank fraud, bank fraud, wire fraud, and three counts of misapplication of bank funds. Dkt. 61. His trial began on November 8, 2022, and continued until November 22, when the district court charged the jury.

Jury deliberations began around 10:22 a.m. Tr. 2152:9–2153:22.[1] Around 7:45 p.m., the court notified the parties that it had received two notes from the jury. Tr. 2157:24–2158:4. The first note said a juror needed antibiotics. Tr. 2158:1–2. The second note said the same juror was "[f]eeling pressure to change my vote." Tr. 2158:3–4; Tr. 2159:6–8. The court said its instinct was that there were alternates and that it was not practical to send this juror home to get her medicine and then return to continue deliberations. Tr. 2158:7–11. The court requested input from the parties, "welcom[ing] any thoughts anyone may have." Tr. 2158:13–14.

Defense counsel asked whether the jury could come back in the morning. Tr. 2158:16–17. The court responded that there was no issue with the jury

---

[1]    Unless otherwise noted, all citations to "Tr." are to Dkt. 223, the transcript from November 22, 2022, attached to Laffitte's motion as Exhibit A.

deliberating, no message that the jury was stuck, and no indication an *Allen*[2] charge was needed. Tr. 2158:18–22. The court expressed that it was "trying to be fair" and said, "it just strikes me that under this sort of situation, the better course is -- that's why we have alternates." Tr. 2158:24–2159:4. "But," the court continued, "I want to hear from you about this." Tr. 2159:4–5. The Government suggested that the jury should be permitted to continue to deliberate that night. Tr. 2159:9–14.

At that point, the court received a third note from the jury. Tr. 2159:23–24. The court said, "This appears to be -- I can't quite figure it out. May be all the other jurors." Tr. 2160:1–2. In the note, a group of jurors expressed concern that "[a] juror's previous court experience is influencing that juror's ability to discuss the trial in a group setting." Tr. 2160:9–11. The note said the juror had made comments "on having been bullied as a juror on previous trials," and advised that the juror in question would not consider evidence in this trial, was "hostile to hearing any debate from certain other jurors," and disagreed with definitions the court had provided in the jury charge. Tr. 2160:11–16. The jurors who wrote the note asked that the court "consider speaking to this issue so that we are able to proceed with deliberations." Tr. 2160:16–18.

Before the parties could be heard on the third note, the court received a fourth note. Tr. 2160:3–5. The fourth note asked the court: "can you please call an

---

[2]     *Allen v. United States*, 164 U.S. 492 (1896).

alternate as I am experiencing anxiety and unable to clearly make my decision?" Tr. 2160:21–23. The court told the parties this note was from a different juror than the one who had written the first two notes. Tr. 2160:23.

The Government immediately took the position that the court should relieve both the juror who was not following the law and the juror who needed to take her medication. Tr. 2161:10–12. The court responded, "I don't want to read tea leaves . . . [Y]ou know, we shouldn't know what they're deliberating. And they are appropriately not telling me what they are doing. And I have no idea what they are doing." Tr. 2161:19–21. The court again specifically requested input from defense counsel, stating, "Mr. Daniel, your suggestions? I value your experience." Tr. 2161:24–25. At defense counsel's request, the court re-read the third note. Tr. 2162:1–18.

The court cautioned the parties about making decisions based on a calculation of whether the jurors in question were voting to convict or acquit, stating, "[I]f somebody was calculating this and said, oh, I think they are going to help me, and you end up keeping them on and, you know, whatever, you end up convicting your person, you end up with a conviction, somebody is going to feel pretty silly, and vice versa." Tr. 2163:4–9. The court made clear, "I don't worry about the result myself. I worry about do I have effective jurors." Tr. 2163:9–10.

The court then told the parties that it was inclined to speak to the juror who potentially was refusing to deliberate, with a court reporter present but outside the presence of the parties, to inquire as to whether there was a problem. Tr. 2163:14–21. The court said if there was not a problem, it would allow the juror to continue deliberating. Tr. 2163:22. Turning to the specific concerns addressed in the first and fourth notes, the court stated:

> *I think the one with the medicine we need to send home.* She needs her medicine. I understand that. . . .
>
> The person with the anxiety, that's a concern for me too. I don't want someone who is not functioning to be -- I've got 12 jurors for a reason. The defendant's rights are protected by having 12 functioning jurors. And it's got to be unanimous. So I've got a problem having somebody who says I can't do it anymore. That's my concern.
>
> *But I want to hear from everybody before I make a decision*, because I think we are on virgin territory.

Tr. 2164:1–15 (emphasis added).

The Government argued the court should relieve the juror who needed to take medicine, remove the juror who could not follow the law, and inquire as to whether the juror who was experiencing anxiety was still a "viable" juror. Tr. 2164:16–2165:6.

With respect to the juror who potentially refused to follow the law, the court said, "I don't want anybody else ganging up on somebody and trying to bump them off a jury. I need to confirm that." Tr. 2164:25–2165:2. It continued, "I've got to

confirm that. I can't let a juror be bumped out one way or the other who says, that's not accurate, I'm fully participating, they just don't agree with me. That -- you know, that's not a juror I remove." Tr. 2165:12–16. And it stated a third time, "I've got to confirm it. I can't rely on someone else's account." Tr. 2166:1–2.

The court then said, "with the consent of the parties, we are going to set up a place where I will take a court reporter, and *without anyone present but the court reporter*, I will create a record. And with my deputy and my court reporter, I will ask the juror if there's a problem." Tr. 2166:2–7 (emphasis added).

The Government requested that the court "maybe do the same thing with the juror who's reporting being anxious." Tr. 2166:8–13. The court asked, "Do I have consent of the parties for me creating a record to question the juror?" Tr. 2166:14–15. Defense counsel said, "Yes, you do have the consent, Your Honor." Tr. 2166:19–20. Defense counsel did not object to the procedure proposed by the court or request to be present during the court's voir dire.

Defense counsel then asked whether the note regarding the juror with the "strongly held conviction" used a pronoun, in an attempt to determine the gender of the juror. Tr. 2166:23–25. The court responded that there was no pronoun. Tr. 2167:1–3.

The last thing the court said before leaving the courtroom was, "*I'm going to take action*. Fair enough? Everybody happy with that?" Tr. 2168:11–12 (emphasis

6

added). The Government agreed. Tr. 2168:13. There was no objection, request for

clarification, or expression of confusion from the defense. *See* Dkt. 269 at 9

██████████████████████████████████████████████

██████████████████████████████████████████████

████████████████████████████████ (under seal).

Upon the court's return, it notified the parties that it had allowed the juror

who needed medicine (later identified as Juror 93) to go home. Tr. 2168:17–19.

The court had also relieved the juror experiencing anxiety (later identified as Juror

88), stating:

> I spoke with the juror expressing anxiety. And she asked to be
> relieved and said she wasn't able to go forward, and I removed her. I
> relieved her. I granted her request to -- for an alternate. I just basically
> said to her, tell me, can you do your duties? And she said, I cannot do
> my duties. She's got medication issues herself, anxiety issues. And I
> relieved her.
>
> And the decisions I've made resolved the other issue, so I didn't have
> to address it. That was the longer one. I never had to address it. I
> understood that it took care from those other decisions.
>
> And I'm going to bring the jurors in to tell them they have to begin
> their deliberations again because there are new jurors.

Tr. 2168:20–2169:8; *see also* Dkt. 212 at 2:23–3:5 (under seal). After having

consented to the procedure outlined by the court, defense counsel then responded,

"we would object not to the juror that was replaced for medication. *We agreed to*

*that. We agreed to that at the time*." Tr. 2169:25–2170:4 (emphasis added); *see*

7

*also* Dkt. 224 at 9 (defense counsel noting "Laffitte consented to the removal of the juror needing her antibiotic"). Counsel continued, "But the second juror that was replaced about the anxiety is the one we would like to -- make an objection to." Tr. 2169:25–2170:4.

The court answered that the juror in question was "emotionally very fragile" and could hardly speak. Tr. 2170:5–7. The court further explained that the juror

> was on anxiety medication and that she was not physically capable or emotionally capable of going forward. I didn't think I had any choice. We never got into what's going on in the jury room or anything like that. It was -- and she was shaking when she was speaking to me. There wasn't any confusion about that one.

Tr. 2170:5–13; *see also* Dkt. 269 at 9 ██████████████████████████

████████████████████████████████████████████████

███████████████████████ (under seal).

The court replaced the two relieved jurors with two alternates and instructed the jury to begin deliberations again. Tr. 2170:18–25. Within an hour, the jury reached a verdict. Defense counsel then reiterated their objection to replacing the anxious juror. Tr. 2171:12–14. The court responded, "I did what y'all asked me to do." Tr. 2171:15. Defense counsel answered, "I am not asking you to do anything differently now. Our understanding is that's essentially, with the case law, it's akin for moving to a mistrial. And just for the sake of the record, we just wanted to

bring that up. We object to replacement of *one juror*." Tr. 2171:16–21 (emphasis added).

The court responded:

On what basis? Because I asked you what did you want me to do on these? And we agreed I would talk to the juror, who could hardly speak, she was so emotionally upset. And I asked her if she could serve. . . . And she asked me to remove her, as she had written me already and asked me to remove her. So I was doing exactly what we all agreed I would do.

I'm a little perplexed by that, Mr. Austin, to after the fact coming in and start complaining about something on a procedure we had agreed to already.

Tr. 2171:22–2172:6.

Defense counsel stated that they thought they had objected on the record, but the court explained that their objection was lodged only *after* the court did what all parties agreed it would do. Tr. 2172:7–16. The court continued:

You know, I try to be as transparent as I could. I read everybody everything. I asked you what you wanted me to do. I interviewed the juror, who was plainly incapable of continuing, and she was in an emotional meltdown. And I removed her. And that's what I understood y'all -- we had agreed that I would interview her and I would make a decision.

Now you now, after the fact, want to change that. You are a little -- moment late. I already sent her home following the procedure. . . .

You know, folks, to come in after the fact here, after the court laid it all out and we agreed on a process, I thought it was very clear, and I did -- but there's a record of her I don't think anybody would really question. It's all on the record about what she told me. And I was, of

9

course, following up on her request that she be removed and told me she could explain it to me, and she did. I don't want to invade her privacy. But she is on significant medication. And she was, in my estimation, in an emotional meltdown situation.

Tr. 2172:17–2173:1, Tr. 2173:24–2174:8.

The jury returned a verdict of guilty on all counts. Tr. 2174:22–2176:6. Laffitte moved for a new trial and judgment of acquittal on all counts arguing, in part, that the court erred by replacing the two jurors. Dkt. 224. Laffitte asserted that the court "erred when it made the decision to dismiss and replace both jurors *in-camera*, outside the presence of Mr. Laffitte or counsel and without providing counsel adequate notice as to the removal of Juror Number 88," *id.* at 10, and that "[v]iable alternatives short of replacing the jurors existed," *id.* at 14.

Two weeks later, Laffitte moved to file under seal affidavits from the two relieved jurors. Dkt. 230. The court ordered the parties to brief whether the court could receive the affidavits under Federal Rule of Evidence 606(b).[3] Dkt. 233. Laffitte then moved to file under seal a third juror affidavit. Dkt. 240.

████████████████████████████████████████ Dkt. 242 (under seal). Days later, he retained new counsel, Dkt. 243, 244, ████████ ████████████████████████████ Dkt. 254 (under seal). ████████████

---

[3]    Rule 606(b) provides that, with very limited exceptions, a court may not receive a juror's affidavit or evidence of a juror's statement regarding any statement made or incident that occurred during the jury's deliberations, the effect of anything on any juror's vote, or any juror's mental processes concerning the verdict or indictment. Fed. R. Evid. 606(b).

███████████████████████████████████

███████████████████████████████████

███████████████████████████████████

███████████████████████████████████

███████████████████████████████████

███████████████████████████████████

███████████████████████████████████

████████ Dkt. 260 (under seal) (attached as **Exhibit A**).

The district court denied Laffitte's motions for a new trial and a judgment of

acquittal. Dkt. 267. ████████████████████████████

███████████████████████████████████

████████████ Dkt. 269 at 7 ████████████████████

(under seal). ████████████████████████████

███████████████████████████████████

███████████████████████████████████

███████████████████████████████████

███████████████████████████████████

███████████████████████████████████

---

4      The district court found "[t]he performance of Defendant's trial counsel in addressing the issue of the juror notes and developing a common plan of action was well within professional standards and there was not the slightest suggestion of ineffectiveness." Dkt. 267 at 18.



Laffitte then filed another motion for a new trial, based on purportedly newly discovered evidence. Dkt. 274. The district court denied the motion. Dkt. 289.

5   Dkt. 281 (under seal) (attached as **Exhibit B**).   Dkt. 282 (under seal) (attached as **Exhibit C**).   *Id.*

The case was called for sentencing on August 1, 2023. Dkt. 312. The court imposed an 84-month sentence, restitution, a special assessment, and five years of supervised release. Dkt. 316. At the end of the hearing, defense counsel requested that the court allow Laffitte to remain on bond pending appeal. Dkt. 323 at 200:7–10. Counsel argued that the removal of the two jurors "could reverse this conviction" and that Laffitte was not a flight risk. *Id.* at 200:14–19.

The court recited the applicable standard: "To allow an appeal bond, I must make a finding that there is a substantial question of law or fact likely to result in reversal and order for a new trial." *Id.* at 201:1–3. It continued:

> I do not make such a finding. And, in fact, this whole issue about the jurors that was part of the post-conviction motions was a motion filed by you, Mr. Moore, claiming that the other lawyers were incompetent for having consented to the very decisions made by this Court regarding the jurors. And the government appropriately said, well, they basically admitted our argument, which was that this was proper. The jury decisions were made in close consultation of defense counsel and government counsel and consented to by both. I do not find that it's likely that there will be a reversal. And I deny the appeal bond on that basis.

*Id.* at 201:3–14. Laffitte timely filed a notice of appeal, Dkt. 319, and has moved this Court to release him pending resolution of the appeal.

## STANDARD OF REVIEW

This Court reviews a court's order denying bond for clear error. *United States v. Langford*, 687 F. App'x 265 (4th Cir. 2017) (unpublished); *see also United States v. Vasquez-Benitez*, 919 F.3d 546, 551 (D.C. Cir. 2019); *United*

*States v. McCandless*, 841 F.3d 819, 822 (9th Cir. 2016); *United States v. Mercedes*, 254 F.3d 433, 435 (2d Cir. 2001).

The Court ordinarily reviews a district court's factual findings for clear error and its legal conclusions de novo. *United States v. Perkins*, 67 F.4th 583, 589 (4th Cir. 2023). In recognition of the trial court's supreme vantage point and unique perspective, the Court reviews the decision to replace a juror with an alternate under an abuse of discretion standard, "which is rarely found in this context." *United States v. Runyon*, 707 F.3d 475, 517 (4th Cir. 2013).

Where a defendant raises a claim on appeal that he did not preserve in the district court, the Court reviews only for plain error. *United States v. Walker*, 934 F.3d 375, 377–78 (4th Cir. 2019); Fed. R. Crim. P. 52(b). To prevail, the defendant must show (1) an error that (2) was clear or obvious, (3) affected his substantial rights, and (4) seriously affects the fairness, integrity, or public reputation of judicial proceedings. *Walker*, 934 F.3d at 378.

## ARGUMENT

## I.   Applicable Legal Standard

Section 3143(b) of Title 18 creates a presumption that a defendant who has been convicted and sentenced to prison be detained pending appeal: a defendant who has been found guilty and sentenced to prison must be detained unless the court finds (1) by clear and convincing evidence that the defendant is not likely to

flee or pose a danger if released, (2) that the appeal is not for the purpose of delay, and (3) the appeal raises a "substantial question of law or fact" likely to result in, as relevant here, reversal or an order for a new trial. 18 U.S.C. § 3143(b)(1).

A "substantial question" is "a close question or one that very well could be decided the other way." *United States v. Steinhorn*, 927 F.2d 195, 196 (4th Cir. 1991) (per curiam) (quotation marks omitted). If the question is substantial, the Court must determine "whether the substantial question is important enough to warrant reversal or a new trial on all counts for which the district court imprisoned the defendant." *Id.*

The burden is on the defendant to make all three showings required by Section 3143(b). *United States v. Bakker*, 891 F.2d 287 (4th Cir. 1989) (Table). Failure to establish any of the requirements "warrants denial of the motion."[6] *Id.*

## II. There is no substantial question of law or fact likely to result in reversal or a new trial.

Laffitte waived any challenge to the replacement of the jurors by consenting to the district court questioning Juror 88 *in camera* and "tak[ing] action" and

---

[6] The Government does not dispute that Laffitte is not likely to flee, does not pose a danger to the community, and is not appealing for the purpose of delay. This response therefore focuses solely on whether the appeal raises a substantial question of law or fact likely to result in reversal or a new trial. It is not intended to be a full response to the merits of each of Laffitte's claims, and the Government reserves the right to raise additional claims or defenses in response to Laffitte's opening brief. The Government does not forfeit or waive any such arguments by failing to raise them here.

consenting to the removal of Juror 93 based on her need to take medication. His claims cannot be reviewed on appeal, let alone create a substantial question of law or fact likely to result in reversal or a new trial.

Even assuming his claims are preserved, Laffitte has not shown there is a substantial question as to the removal of either juror. The court's uncontested approach to addressing the jurors' issues was contemplated by and permissible under both Rule 24 and this Court's case law. Laffitte has not presented a substantial question of law or fact likely to result in reversal or a new trial, and his motion should be denied.

### A. Laffitte consented to the actions he now challenges on appeal. His claims cannot be reviewed, much less amount to a "substantial issue of law or fact."

When a defendant intentionally decides not to assert a right, or intentionally relinquishes a known right, he waives any subsequent claim that the action was error. *United States v. Robinson*, 744 F.3d 293, 298 (4th Cir. 2014). And while Rule 52(b) provides courts discretion to correct errors that were forfeited because not timely raised, no such discretion applies when there has been true waiver. *See United States v. Olano*, 507 U.S. 725, 731–34 (1993). Waived claims are unreviewable on appeal. *Robinson*, 744 F.3d at 298.

16

## 1. Laffitte consented to the procedure the district court used to replace Juror 88.

Laffitte agreed that the district court would speak to Juror 88 with only a court reporter and courtroom deputy present and then "*take action*" regarding her request to be replaced. The district court correctly found Laffitte waived his challenges to the procedure the court followed in questioning and then relieving Juror 88. Dkt. 267 at 15. His waived claims are unreviewable, *Robinson*, 744 F.3d at 298, and the replacement of Juror 88 does not present a substantial issue of law or fact that would warrant releasing Laffitte on appeal.

After reading Juror 88's note, the court specifically requested input from defense counsel, stating, "Mr. Daniel, your suggestions? I value your experience." Tr. 2161:24–25. The court then told the parties that it was inclined to speak to the juror who potentially was refusing to deliberate, with a court reporter present but outside the presence of the parties, to inquire as to whether there was a problem. Tr. 2163:14–21. The court continued:

> The person with the anxiety, that's a concern for me too. I don't want someone who is not functioning to be -- I've got 12 jurors for a reason. The defendant's rights are protected by having 12 functioning jurors. And it's got to be unanimous. So I've got a problem having somebody who says I can't do it anymore. That's my concern.
>
> *But I want to hear from everybody before I make a decision*, because I think we are on virgin territory.

Tr. 2164:1–15 (emphasis added).

17

The court then said, "*with the consent of the parties*, we are going to set up a place where I will take a court reporter, and *without anyone present but the court reporter*, I will create a record. And with my deputy and my court reporter, I will ask the juror if there's a problem." Tr. 2166:3–7 (emphasis added).

The Government asked the court to "maybe do the same thing with the juror who's reporting being anxious." Tr. 2166:8–13. The court asked, "Do I have consent of the parties for me creating a record to question the juror?" Tr. 2166:14–15. Laffitte's counsel replied, "Yes, you do have the consent, Your Honor." Tr. 2166:19–20.

The last thing the court stated before leaving the courtroom was, "Okay. *I'm going to take action*. Fair enough? Everybody happy with that?" Tr. 2168:11–12 (emphasis added). The Government agreed. Tr. 2168:13. There was no objection, request for clarification, or expression of confusion from the defense. *See* Dkt. 269 at 9 ███████████████████████████████████████ ███████████████████████████████████████ ███████████████████████████ (under seal). The court then questioned Juror 88 in a separate courtroom.

Laffitte did not object until *after* the court returned and informed the parties that, based on his conversation with the juror, she had been relieved. Tr. 2169:25–2710:4. Both the court and the Government expressed surprise at Laffitte's newly

raised objection given Laffitte's earlier consent to the proposed procedure. Tr. 2171:12–2174:8; *see* Dkt. 267 at 15 (finding "[t]he Court and Government counsel expressed surprise because defense counsel had plainly agreed to the *in camera* questioning of the juror and for the Court to 'take action' on the juror's request to be replaced"). Laffitte's belated objection did not preserve any challenge to the procedure the court used.

The claim that Laffitte's consent is invalid because the court failed to provide the parties with "critical information which Laffitte needed to make important strategic decisions" is unavailing. *See* Mot. 22–24. Laffitte did not request any additional information about the juror who asked to be relieved due to anxiety—not the juror number, not the identity, and not the gender.[7] There is no reversible error in the court's failure to provide Laffitte information he did not request.

---

7 ███████████████████████████████████████████████████████████████
███████████████████████████████ but that was obvious: when the court received the fourth note, it immediately informed the parties, "That's a different juror." Tr. 2161:23.

More importantly, Juror 88 asked to be replaced because she was suffering from anxiety. The parties did not need to not know her identity before deciding whether her anxiety provided a proper basis for replacement. The court based its decision to excuse Juror 88 solely on her inability to fulfill her duty as a juror, not on any identifying characteristics or perception about which way she was leaning—both of which would have been clearly improper.

████████████████████████████████

████████████████████████████████████

███████████████████████████████████

████████████████████████████ but he didn't pass on the

opportunity to get more information from her. To the contrary, he explicitly

consented to the district court questioning the juror and taking action. The whole

purpose of the court's *in camera* voir dire of Juror 88 was to obtain more

information before deciding whether to honor her request to be replaced. Laffitte's

counsel consented to the procedure the district court used to evaluate whether to

relieve Juror 88. He thereby waived any challenge to that procedure.

### 2. Laffitte consented to the replacement of Juror 93.

Laffitte has repeatedly represented to the district court that he agreed to the

replacement of Juror 93 based on her need for medication.[8] Tr. 2169:25–2170:4;

Tr. 2171:16–21; Dkt. 224 at 9. The district court correctly found Laffitte waived

his challenge to the replacement of Juror 93 when he consented to her removal.

Dkt. 267 at 13. His claims related to the removal of Juror 93 are therefore also

---

[8] ████████████████████████████████████

████████████████████ *See* Dkt. 254 at 4 (under seal). Only now, in attempting to show that
there are substantial questions of law warranting his release pending appeal, does
Laffitte argue that his trial counsel actually did not consent to Juror 93's
replacement.

unreviewable, *Robinson*, 744 F.3d at 298, and her replacement does not present a substantial issue of law or fact that would warrant releasing Laffitte on appeal.

Defense counsel expressly agreed to the replacement of Juror 93. Tr. 2169:25–2170:4 ("We agreed with that. We agreed with that at the time."); Dkt. 224 at 9 (defense counsel conceding "Laffitte consented to the removal of the juror needing her antibiotic"); *see* Dkt. 269 at 12–13 ███████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████ (under seal). He has waived any claimed error in such action. *See United States v. Spruill*, 808 F.3d 585, 599 (2d Cir. 2015) ("Spruill, through counsel, also acted intentionally when he affirmatively agreed to and, at times, even recommended the actions he now challenges with respect to the removal of Juror 11. Thus, his [challenge to the juror's removal] is not simply forfeited without plain error, but waived.").

As with Juror 88, Laffitte now argues his consent was invalid because the district court did not take steps Laffitte did not ask the court to take. First, he claims the district court did not properly investigate Juror 93's medical needs before replacing her and that "Laffitte's counsel were entitled to assume that the

court had investigated, made a record, and determined, based on evidence, that this juror's medical needs rendered her unable to perform her duties," but it did not do so.[9] Mot. 28–29. But Laffitte never asked the court to inquire more about Juror 93's needs. The court suggested questioning the non-deliberating juror, and the Government requested that it also question the anxious juror. Tr. 2165:21–2166:13. Defense counsel consented to those proposals. Tr. 2166:19–20. At no point did Laffitte request additional information about or questioning of the juror who needed medication, and the district court's failure to do something Laffitte never asked it to do neither undermines Laffitte's consent nor amounts to reversible error.[10]

████████████████████████████████████████

████████████████████████████████████████

████████ *See* Mot. 29. Laffitte did not request an opportunity to review Juror

---

[9]     Earlier in his motion, Laffitte asserts that he *only* consented to the district court questioning the non-deliberating juror to create a record. Mot. 8; *see also id.* at 21 n.12. Laffitte cannot credibly argue both that he had no expectation the district court would do anything beyond question the non-deliberating juror *and* that he was "entitled to assume" the court did exactly that by also questioning the juror who needed medication.

[10]
████████████████████████████████████████
████████████████████████████████████████ *See* Dkt. 269 at 13–
15 ████████████████████████████████████████
████████████████████████ (under seal).
████████████████████████████████████████

93's note.[11] And because he consented to her replacement based on her need to take medication, Tr. 2169:25–2170:4 ("we would object not to the juror that was replaced for medication"), ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Dkt. 269 at 14 (under seal).▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮ His challenges to the removal of Juror 93 are unreviewable. They do not present a substantial issue likely to result in reversal or a new trial.

**B. Assuming Laffitte preserved his claims, he cannot carry the heavy burden of showing there is a close question as to whether the district court abused its broad discretion in replacing the jurors.**

Laffitte cannot show there is a "close question or one that very well could be decided the other way," *Steinhorn*, 927 F.2d at 196 (quotation marks omitted), as to whether the district court abused its discretion by replacing the two jurors. To the contrary, this Court has already recognized such a finding would be rare.

Federal Rule of Criminal Procedure 24(c) "expressly authorizes district courts to impanel alternate jurors and to substitute them for jurors who can no longer serve." *Runyon*, 707 F.3d at 517. In recognition of the district court's

---

[11]     For this same reason, the fact that the district court did not disclose Juror 93's identity is not reversible error. Laffitte never asked for a juror number or identity.

superior vantage point on matters of trial management, the Court reviews the decision to replace a juror with an alternate for abuse of discretion, "which is rarely found in this context." *Id.*; *see also United States v. Nelson*, 102 F.3d 1344, 1349–50 (4th Cir. 1996); *United States v. Hayden*, 85 F.3d 153, 157 (4th Cir. 1996); *United States v. Colkley*, 899 F.2d 297, 303 (4th Cir. 1990).

Like this Court, other appellate courts afford district courts significant discretion in deciding whether to replace jurors with alternates. *See, e.g.*, *United States v. Penn*, 870 F.3d 164, 171 (3d Cir. 2017); *United States v. Picardi*, 739 F.3d 1118, 1122 (8th Cir. 2014); *United States v. De Oleo*, 697 F.3d 338, 341 (6th Cir. 2012); *United States v. Farhane*, 634 F.3d 127, 168 (2d Cir. 2011); *United States v. Boone*, 458 F.3d 321, 329 (3d Cir. 2006).

Appellate courts are particularly deferential in situations where a juror's mental or physical capacity to continue serving is at issue. *See United States v. Thompson*, 528 F.3d 110, 121 (2d Cir. 2008) (juror replaced after telling judge her nerves "were shot"); *United States v. Huntress*, 956 F.2d 1309, 1313 (5th Cir. 1992) (juror in poor health became more ill during deliberations and was replaced); *United States v. O'Brien*, 898 F.2d 983 (5th Cir. 1990) (juror with recent history of depression replaced); *United States v. Varnedore*, 73 F. App'x 356, 360 (10th Cir. 2003) (unpublished) (trial judge determined juror who suffered painful injury and was on pain medication should be excused).

24

District courts have substantial discretion over whether to replace jurors, and Laffitte faces an exceedingly high bar in establishing any likelihood this Court will find that the district court abused that discretion. He cannot clear that bar as to either juror.

### 1. The district court did not violate Laffitte's right to be present when either juror was removed.

Federal Rule of Criminal Procedure 43(a)(2)[12] and the Fifth Amendment's Due Process Clause require a defendant's presence at the removal of jurors. *Runyon*, 707 F.3d at 517. Laffitte's right to be present was not violated by the removal of either juror.

To the extent a defendant must be physically in the same room when a juror is excused, the district court correctly found Laffitte waived that right as to Juror 88 when his counsel agreed to let the court voir dire the juror and "take action" outside his presence. *See* Dkt. 267 at 15. The court gave Laffitte sufficient notice of its proposed plan and an opportunity to provide suggestions on the best course of action. *See, e.g.*, Tr. 2158:6–2168:11 ("I welcome any thoughts anyone may have."). The court sought input from the parties on numerous occasions, specifically telling defense counsel that it valued his experience. Tr. 2161:24–25. Laffitte had ample opportunity to weigh in on the court's *in camera* meeting with

---

[12]     Rule 43(a)(2) requires a defendant's presence at "every trial stage."

the juror, but he neither requested to be present nor objected to the court meeting with the juror outside his presence to "take action."

Moreover, under any reasonable interpretation of the presence requirement, Laffitte and his counsel *were* present when the court considered whether to relieve and replace both jurors. Juror 88 was relieved after extensive discussion with both parties in open court. The court did not err by following "a procedure [the court and parties] had agreed to." Tr. 2171:23–2172:3. And, as the district court held in denying Laffitte's request for a new trial, his claim that Juror 93 was removed outside of his presence "is simply untrue." Dkt. 267 at 13. Laffitte's counsel were actively engaged in discussions with the court and the Government about how to proceed, and Laffitte, a "sophisticated businessman, was sitting at counsel table throughout these discussions." *Id.* at 18. Laffitte was unquestionably present when the court, the Government, and his counsel devised a plan for responding to the juror notes.

### 2. Laffitte cannot show a substantial question likely to result in reversal or a new trial as to Juror 88.

Laffitte's claim that the district court committed reversible error by replacing Juror 88 is reviewed for—at most—an abuse of discretion.[13] *Runyon*, 707

---

[13]    As discussed above, Laffitte consented to the procedure used to determine whether to relieve Juror 88 and therefore waived any claims related to that issue. To the extent the Court finds he simply failed to object when he had the

F.3d at 517. But his challenges to the district court's factual findings are reviewed only for clear error. *Perkins*, 67 F.4th at 589. Laffitte cannot overcome the two highly deferential standards of review to establish there is a substantial question of law or fact likely to result in reversal or a new trial. The court did not clearly err in finding Juror 88 was physically and emotionally unable to continue deliberations, and it properly exercised its broad discretion to relieve her.

> **a. The district court did not clearly err by finding Juror 88 could not continue to perform her duties or abuse its discretion by releasing her.**

Once the court employed the agreed-upon plan to voir dire Juror 88 outside the presence of the parties, the court was well within its discretion to release her after finding she was incapable of performing her duties. The court found it was "obvious that Juror No. 88 was under considerable stress." Dkt. 267 at 14. She "initially asked the Court to wait to allow time to compose herself," then told the court she was not able to perform her duties as a juror. *Id.*; Dkt. 212 at 2–3 (under seal).

The court found Juror 88 was "plainly incapable of continuing" and "emotionally incapable of functioning." Tr. 2168:20–2170:13; Tr. 2172:17–2174:8. The court noted she was on medication, experiencing anxiety, shaking and could hardly speak, and, by the court's estimation, in an "emotional meltdown

---

opportunity to do so, his claims related to Juror 88 would be reviewed for plain error. *Runyon*, 707 F.3d at 517.

situation." Tr. 2168:25; Tr. 2172:19–21; Tr. 2174:6–8. None of these findings are clearly erroneous. And after making them, the court appropriately exercised its discretion to replace Juror 88 because she could not uphold her duties as a juror.

The court did not abuse its discretion by replacing Juror 88 rather than adopting some alternative solution. Laffitte argues the court should have "suggest[ed] any alternative that may have very well alleviated her anxiety." Mot. 26. But Laffitte had an opportunity to propose alternative measures when the court repeatedly asked for the parties' input, and he declined to do so. The fact that the court could have proceeded differently does not mean it acted unreasonably by proceeding as it did. Laffitte's after-the-fact objection and speculative second-guessing cannot establish that the district court abused its discretion.

### b. The district court did not remove Juror 88 based on her views of the evidence.

The record does not support Laffitte's claim that Juror 88 was improperly removed based on her views of the evidence. *See* Mot. 25. In fact, when the district court rejected Laffitte's motion for a new trial, it found his claim that Juror 88 was replaced because of her disagreement with other jurors was "simply untrue." Dkt. 267 at 16. The court stated it spoke with Juror 88 only "because she indicated that she was anxious and needed to be replaced with an alternate" and that its "singular focus was on [her] ability to perform her duties as a juror." *Id.*

The court's post-trial findings are supported by the transcript of the proceedings surrounding Juror 88's replacement. The court stated repeatedly that it would not allow jurors to "gang[] up on somebody and try[] to bump them off a jury." Tr. 2164:25–2165:2; Tr. 2165:12–17 ("I can't let a juror be bumped out one way or the other"). And the court made clear that it "never had to address" the potential issue of dissension and "never got into what's going on in the jury room or anything like that" with either of the excused jurors.[14] Tr. 2169:2–5; Tr. 2170:10–11.

There is simply nothing in the record to support Laffitte's claim that the removal of Juror 88 was linked to her views of the evidence. The court did not make any inquiries into her position with respect to the other jurors, her views of the evidence, or the allegations that a juror was unwilling to deliberate or follow the court's instructions. Tr. 2169:2–5. The court excused Juror 88 based solely on

---

[14] ███████████████████████████████████████████████████████████████ Mot. 24–25, but the district court conscientiously avoided any discussion of deliberations with the jurors. *See* Dkt. 267 at 15–16; *see Spruill*, 808 F.3d at 593 (holding district court's discretion in removing deliberating jurors extends to deciding "whether, and to what degree, to question a deliberating juror regarding circumstances that may give cause for removal," and noting "[s]uch questioning must be pursued cautiously . . . so as not to intrude on one of the cornerstones of our jury system: preservation of the secrecy of jury deliberations"); *Boone*, 458 F.3d at 329. The record is clear that ███████████████████████████████████

her fragile mental state and representation to the court that she was unable to continue deliberations.

### 3. Laffitte cannot show a substantial question likely to result in reversal or a new trial as to Juror 93.

Laffitte consented to the replacement of Juror 93 based on her need to take medication after a full discussion between the court and the parties, for which Laffitte was present. No aspect of the replacement of Juror 93 presents a substantial question of law or fact likely to result in reversal or a new trial.

### 4. Any error in replacing either juror is not reversible.

As discussed above, Laffitte's claims have not been preserved and are therefore either unreviewable or reviewed only for plain error. Assuming, however, that he establishes the district court committed constitutional error, the Government can prove the error was harmless beyond a reasonable doubt.[15] *See United States v. Camacho*, 955 F.2d 950, 955 (4th Cir. 1992).

First, Laffitte was not prejudiced by replacing Jurors 88 and 93 with alternates. The two alternates were empaneled at the same time as the other jurors, while Laffitte and his counsel were present. *See Runyon*, 707 F.3d at 517 (holding that, although the district court erred by dismissing a juror outside the presence of the defense, the error did not affect the defendant's substantial rights because the

---

[15]     This argument assumes—as Laffitte's motion does—but does not concede that he has raised properly preserved claims of constitutional error.

alternate had been selected during the exact same process as the remaining jurors). The alternates were subjected to the same voir dire and opening and final jury charge as the other jurors. And when polled, each juror affirmed the verdict. Tr. 2176:9–2177:15.

Second, as extensively detailed in the Government's responses to Laffitte's motions for new trials, Dkt. 238, 280, overwhelming evidence supported Laffitte's guilt on all six counts. Laffitte's argument that the outcome of the trial would have been different had Jurors 88 and 93 not been excused relies solely on information contained in inadmissible juror affidavits ████████████████████████████ ████████████████████████████████ Dkt. 269 at 11 (under seal). ████████████████████████████████████████ ██████████████████████████ *See United States v. Acker*, 52 F.3d 509, 516 (4th Cir. 1995) (upholding district court's refusal to consider juror affidavit claiming excused juror would not have voted to convict defendant). Their statements cannot create a substantial issue likely to result in reversal or a new trial.

## CONCLUSION

There is no substantial question of law or fact likely to result in reversal or a new trial. Laffitte consented to the procedure the district court used to replace Juror 88 and has repeatedly acknowledged he consented to the removal of Juror 93. His

unpreserved claims are highly unlikely to succeed on appeal. And even if the claims were preserved, there is no close question as to whether the district court abused its broad discretion in replacing the jurors. Laffitte's motion for release pending appeal should be denied.

Respectfully submitted,

ADAIR F. BOROUGHS
UNITED STATES ATTORNEY

By: */s/Kathleen M. Stoughton*
Kathleen M. Stoughton
Emily Evans Limehouse
Winston D. Holliday, Jr.
Assistant United States Attorneys
1441 Main Street, Suite 500
Columbia, SC 29201
Tel. (803) 929-3000
Email: Kathleen.Stoughton@usdoj.gov

August 25, 2023